**Leonard V. Solomon, Plaintiff-Appellant, v. Nathan Geller et al., Defendants-Appellees.**

**Gen. No. 49,263.**

First District, Third Division.

April 23, 1964.

Samuel E. Hirsch, of Chicago, for appellant.

Seymour F. Simon, Joseph D. Teitelbaum, and Nathan Wolfberg, all of Chicago (Raymond K. Berg, of counsel), for appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

The plaintiff has appealed from a decree in a declaratory judgment proceeding finding that the defendants, who had leased property to the plaintiff in Chicago, Illinois, known as the Lincoln Motel, had not terminated the lease by taking possession of the premises, and that plaintiff-lessee was not entitled to the return of a deposit of $20,000 given by him as security for the performance of his obligations under the lease.

16

The trial court found that defendants took possession after nonpayment of the October 1962 rent and after both the plaintiff and plaintiff's assignee M & S Motels Co., Inc., (M & S) had refused to stay in possession and operate the motel, but instead voluntarily delivered possession to defendants when it appeared that if they did not do so, the motel would be closed and abandoned.

The principal issues involved concern the application of the doctrine of surrender and acceptance, whether the findings of the trial court are supported by the evidence, and whether in any event the defendants were entitled to retain the security deposit.

The lease was signed on February 10, 1960. It leased the motel to plaintiff for twenty years at a rental of $2,500 per month, or a total rental of $600,000 for the period. A supplemental agreement was also executed the same day, covering more fully the conditions under which an assignment could be made by the lessee.

Following the execution of the lease and supplemental agreement, plaintiff went into possession and operation of the motel. On October 17, 1961 he made a deal for the sale of the motel and executed an assignment of the lease to the purchaser, a corporation known as M & S Motels Co., Inc. While the lease and the supplemental agreement contained provisions for assigning or subletting without the lessors' consent, the assignment to M & S evidently was considered by the parties not to be within the scope of those provisions, and plaintiff secured defendants' consent in a separate instrument which provided that the lessee guaranteed the performance by the assignee of all the covenants, agreements and conditions contained in the lease, and that *no rights of lessors* to performance of the obligations of the lessee, or rights in and to the security deposit should be diminished or extinguished. A more complete resume of the applicable provisions

17

of the separate instrument of assignment is appended below to show its breadth and scope.[1]

Provisions with respect to the security fund were included in the lease and became a part of the assignment of the lease by plaintiff to M & S. A resume of the relevant provisions is contained in a subjoined note.[2]

Although plaintiff put M & S into possession, the actual assignment papers were not delivered to it, but

---

[1] The lessee guaranteed the performance by the assignee of all the covenants of the lessee and that no rights of lessors as to performance by the lessee or rights in and to the security deposit should be diminished or extinguished. Nothing should be construed to release lessee from any liability under the indenture, and lessors would have such remedies against the lessee, including confession of judgment for money due, as by the lease provided, in the same manner as if the assignment had not been made.

The taking by lessors of any remedy as by confession of judgment against the assignee should not preclude lessors from the exercise of such remedy against him, the assignor, but lessors would have the same remedy against the lessee, the assignor, and the assignee at the same or different times, but lessors shall be limited to one satisfaction for any debts or obligations that may accrue under or by virtue of the lease or the assignment thereof.

[2] "The fund is intended solely as security for Lessee's and Lessee's assignee's faithful performance . . . and Lessee and his assignee shall not be entitled to have the same applied as prepaid or other rent unless Lessor so elects to do."

The lease gave the lessors alternative methods of enforcing their rights. They might retain the fund until the end of the twenty year term and then ascertain their damages and apply any portion of the fund required to indemnify them with respect to such damages, and account for the balance to the lessee; or before the end of the twenty year term, lessors might apply all of the security fund to the curing of any default by the lessee, and notify lessee and his assignee of such application.

The lessee agreed to deposit a sum sufficient to rebuild the security fund to its amount prior to the lessors' application. The existence of the security deposit would not modify, limit or otherwise affect in any way any other rights or remedies of the lessors, and the taking by the lessors of any other remedies would not serve to change those provisions.

18

were put in escrow, subject to a deposit of $5,000 by M & S on January 2, 1962, and of other deposits to be made by it pursuant thereto, none of which, it seems, M & S made, although it continued in possession even after the escrow papers had been returned to plaintiff. This was the nature of the transaction under which M & S came into possession, and this was the status of the matter at the time it finally gave up possession. It is thus questionable what kind of interest M & S had acquired, and while this is not in direct issue in this litigation, defendants argue plausibly that it illustrates the precarious nature of the enterprise, explains the difficulties which subsequently arose, and supports the findings of the trial court that surrender of possession of the motel to defendants was voluntarily made by plaintiff.

Provisions of the lease pertinent to possession and termination are summarized in a subjoined note below.[3]

---

[3] Lessors, at their option, with or without demand or notice, except as expressly provided, may either terminate the lease and lessee's right to possession or terminate lessee's right to possession without terminating the lease, upon certain events, among which are the following: (a) Abandonment of the demised premises; and (b) Default by the lessee in the payment of rent, and the continuance of such default for five days, or default by lessee in the payment of any sum due as additional rent, and the continuance of such default for a period of ten days after notice.

Upon termination of lessee's right to possession without termination of the lease, lessor shall have the right to operate the premises for the benefit of lessee, holding lessee liable for all obligations under the lease.

No legal proceeding for possession nor recovery of possession, nor any action of the lessor, except an express written declaration of termination of the lease, shall operate or be construed as an election by lessors to terminate the lease or the lessors' right to recover future rent, or any other remedy or right, and the acceptance of a tenant or tenants by lessors in place or lessee shall not operate as a cancellation or termination of the lease nor release lessee from the performance thereof.

19

Principal officers of M & S were Leonard A. Slavin, a practicing dentist, and Lawrence B. Mansfield. Each owned 50% of the stock. Mansfield was in active charge of the motel. He disappeared on Labor Day, September 3, 1962. Slavin and one William Durphy took over the operation. On September 19 or 20, 1962, Harold Fein, an attorney for the lessors, had a conversation with one Ferdinand, an attorney for Mansfield. Ferdinand indicated that M & S would be unable to pay the October 1st rent. The October rent was not paid when it came due. On October 5th Slavin, who had previously advanced $5,000 to M & S, told Nathan Geller that he could not pay the rent and that he was giving up possession. Geller said he would talk to his attorney, and asked Slavin to arrange with the manager of the motel to give him (Geller) the keys. Slavin did so, and *after 4:00 p. m. that day,* the motel was in Geller's possession. The plaintiff Solomon was apprised of the situation and met Geller at the motel that evening. Geller testified that he asked Solomon to accept possession and that Solomon replied he would not do so unless Geller gave him a reduction in rent of $500 a month. Geller said, "I can't do it. I will have talk to by brother about it." Solomon then left.

The next day, Donald Geller, Nathan's son, was placed on the motel payroll and began the management of the motel. Nathan opened a bank account to pay bills, discharged some of the maids, took an inventory, sent a list of missing items to Solomon, and raised the rates. Neither Solomon nor Slavin were consulted on any of these decisions. Later, however, both Solomon and Slavin, according to the testimony of Nathan Geller, were asked to take possession and operate the motel. They refused.

On October 11, 1962, defendants mailed a letter to plaintiff, reciting defaults in the payment of rent, gas

20

bills, electric light bills, telephone bills, water bills and mechanics' lien claims for work done, including one for plumbing and heating, failure to make necessary maintenance repairs, to pay insurance premiums for public liability insurance, and necessary replacement of furniture, furnishings and equipment. Plaintiff received the letter but never replied thereto. The notice further stated that upon failure on the part of the plaintiff to cure these and other prior and subsequent defaults as may be ascertained, the lessors would expend such sums as may be required therefor and look to plaintiff to make payment thereof, together with the rent. It concluded with the following paragraph:

"The undersigned will, without hereby intending to terminate the said lease or your liability thereunder, operate the said business thereon so as to minimize all further loss and damage and will apply the income and proceeds of operation, as may be received from time to time, to the discharge of your liability under said lease for rent and otherwise. Personal property which may have been damaged beyond use will be replaced or repairs made thereto, as may be required, and the cost thereof of such replacement and repairs charged to your account."

The instant suit was commenced by plaintiff on *October 22, 1962,* some 17 days after defendants had taken possession. On November 13, 1962, a judgment for $5,232.50 representing rent, plus attorneys' fees, for the months of October and November 1962 was entered.

 We will first consider the nature of the doctrine of surrender and acceptance. It is not a legal principle applying uniquely to the relationship of landlord and tenant. It is based essentially on a mutual

21

consent or understanding and in that view could apply to any kind of agreement involving personal or real property. Under certain circumstances it has been held to apply by operation of law. As between landlord and tenant, it is a set of circumstances under which a court may come to the conclusion that an agreement had been reached whereby the lessee surrendered the premises and the lessor accepted the premises back, both intending thereby to terminate the lease and cancel all the covenants and obligations thereunder.

Alschuler v. Schiff, 164 Ill 298, 45 NE 424, a case frequently cited, best illustrates the character of the defense of surrender and acceptance. There, the lessor and the lessee quarrelled over what the lessee considered necessary repairs to a residence. During the conversation, the lessor said, "I won't fix anything for you. If you don't want to stay here you can move out." The tenant said, "All right, I will get another place and move out," and the landlord replied, "All right." The tenant then returned the key to the lessor, and in subsequent conversation the lessor told him that if he, the lessor, repaired the building, it would be for his own use and that he wanted possession for himself. The trial court directed a verdict for the lessor. On appeal to the Supreme Court it was held that the surrender of a written lease under seal can be shown by parole evidence and therefore the defense created an issue of fact which should have been submitted to the jury.

Subsequent cases following the Alschuler case rested on different sets of facts, but all were based on the conclusion of the court that there were or were not such acts and conversations that a court could find whether or not the lessee desired to surrender and the lessor desired to take possession and thereby cancel all the covenants and obligations of the lease. Brewer

22

v. National Union Bldg. Ass'n, 166 Ill 221, 46 NE 752; Langendorf v. Ritter, et al., 225 Ill App 466; Johnson v. Northern Trust Co., 265 Ill 263, 106 NE 814.

The latest case to come before us is Peirce v. Conant, 47 Ill App2d 294, 198 NE2d 555, opinion rendered March 26, 1964. There the court entered a *summary judgment* against the defendant as guarantor of the covenants of the lease. One of the lessors, in the course of being examined on deposition, said he "accepted the fact—that *there was a surrender* of the premises." (Emphasis added.) The actual meaning of that language as intended by the witness was in dispute, and this court said that while this "was by no means conclusive, taken together with the inferences drawn favorable to the defendant . . . [it] created an issue which could not be resolved on a motion for summary judgment. . . ."

We have hereinbefore stated facts as revealed by the testimony and the evidence which supports the court's decree in the instant case. We recognize that there are some discrepancies and contradictions which plaintiff's counsel has forcefully and skillfully urged upon us. But here, unlike Peirce v. Conant, supra, the court after hearing evidence found among other things that defendants took possession "after the nonpayment of rent for October 1962, and after M & S Motels Co., Inc., and Leonard V. Solomon (either together or separately) refused to continue to possess and operate said motel, but instead, voluntarily delivered possession thereof to Nathan Geller and Louis Geller, and only after it appeared that unless Nathan Geller and Louis Geller took possession of said motel and operated it, the demised premises would have been closed and abandoned." Thus the court found the issue of fact in favor of defendants. Under such circumstances the trial court's decision will not be set aside unless it is against the manifest weight of the

23

evidence, and in the instant case it appears to us that it is supported by the manifest weight of the evidence. Cunningham v. Cunningham, 20 Ill2d 500, 170 NE2d 547; Uksas v. Zelensky, 21 Ill2d 303, 172 NE2d 359.

We have not discussed in detail the provisions of the lease which allow lessor, upon lessee's abandonment *or* continuing default in rent for five days, to terminate the lessee's right to possession and to re-enter and operate the premises for the account and benefit of lessee without terminating lessee's obligations and covenants under the lease. (See Footnote #3.) They specifically provide that lessors shall have the right to terminate possession without terminating the lease if the premises are abandoned *or* upon default in the payment of rent and the continuance of such default for five days. It is also provided that no action of the lessors, *except by express written declaration of termination* of the lease, shall operate or be construed as an election by lessors to terminate the lease.

Plaintiff contends that these provisions are ambiguous and therefore void, but in our opinion they are not ambiguous. They are found in standard forms of leases and are designed to protect the lessor against damage and deterioration of property. Failure of M & S to pay the October rent and the abandonment of the property caused a crisis in the operation of the motel, and lessors properly exercised their rights under these provisions of the lease. Not only did lessors face the loss of rent, but also loss of good will, small as it may have been, and the prospect of physical damage to furnishings, furniture and building if someone did not take possession immediately. The actions the defendants took, such as discharging some of the help and raising the rents, were in the exercise

24

of business judgment and well within the provisions of the lease.

 ■ Plaintiff argues that there was no abandonment nor default in rent which continued for the required five days, nor notice to the lessee, all of which he contends were prerequisites to the lessors' right of re-entry and operation of the motel for the account and benefit of plaintiff. When Geller asked Slavin for payment of the rent, Slavin said he did not have the money and was giving up the premises. While possession was voluntarily delivered to the Gellers, it was nevertheless an abandonment, within the meaning of the lease. Both M & S and Solomon were asked to continue in possession and operate the motel. Both refused. Plaintiff did not offer any assistance or advice, nor does he ask for an accounting now, but lessors say that they have kept adequate records and stand ready to make an accounting of their operation. Plaintiff's refusal to take possession when his assignee abandoned the premises exonerated defendants from the requirement that notice be given and that five days elapse after default in rent. Provisions for notice are for the benefit of lessee and sublessee, to give them a period of time before the landlord could bring action for possession. Here, no such action was necessary because possession was given up voluntarily.

We have examined the cases plaintiff cites to support his position with respect to the doctrine of surrender and acceptance. As we have said, each case involving an alleged surrender and acceptance must be decided on its own peculiar facts, and for that reason we do not find plaintiff's cases persuasive. The case on which he chiefly depends is Saracena v. Priesler, 180 App Div 348, 167 NYS 871 (1917), printing the entire opinion as an appendix to his brief. That was an action by a lessee to recover rent from a sub-

lessee. It appeared that the plaintiff, the lessee of rooms in which he conducted a barber shop and Turkish bath, sublet to the defendants the rooms containing the Turkish bath. Thereafter, the defendants quit the premises without having paid the rent due. The plaintiff sued to recover the rent and after four jury trials obtained a judgment. On appeal to the Appellate Division, that court affirmed the judgment, saying it was conceded there was nothing in the lease conferring any authority on the plaintiff to conduct the Turkish bath business as the agent of the defendant sublessee after the latter abandoned the premises. That of course distinguishes it from the instant case. But aside from that the court sought to distinguish Johnson v. Meeker, 96 NY 93 (a decision by the Court of Appeals), wherein it was held that it was the duty of the lessor not to let the property lie idle, but to operate it. It appeared that the property involved in the Johnson case, was a barge, and the court considered that a barge by reason of exposure is property which depreciates quickly. Certainly, the same may be said of an abandoned motel.

We are of the opinion that the trial court's findings are fully supported by the record, and the decree is affirmed.

Decree affirmed.

DEMPSEY and SULLIVAN, JJ., concur.