BARBARA HEARST, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

(No. 56032;

First District—January 31, 1973.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Peter Fitzpatrick, Assistant Corporation Counsel, of counsel,) for appellant.

James A. Dooley, of Chicago, for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

This is an appeal by defendant, City of Chicago, from a judgment on a jury verdict for plaintiff, Barbara Hearst, for damages sustained in a fall upon a defective city sidewalk. Defendant raises the following issues on appeal:

    1. Whether the City of Chicago was denied an opportunity to show that plaintiff used false testimony to prove her claim; and

    2. Whether the facts discovered after trial entitled the City to a new trial.

The facts are as follows:

On November 14, 1963, at 6:00 P.M., plaintiff testified that she left a grocery store at the intersection of Howard and Rogers streets in Chicago and, in attempting to cross the street, caught the heel of her shoe in a hole in the sidewalk and fell to the pavement. A Chicago Fire Department ambulance took plaintiff to a nearby hospital where it was dis-

covered that her left femur below the hip was broken. An operation was performed by Dr. Edward Grossman, an orthopedic surgeon and a plate and nail were attached to her hip. Plaintiff continued to be troubled by her hip and also developed stiffness in her left shoulder. In September 1964, plaintiff was rehospitalized and an operation was performed on her hip and shoulder. Plaintiff did not return to her job with an interior decorating firm until 1968.

At trial the City attempted to prove that the sidewalk in question was not defective, but that plaintiff fell of her own accord during a dizzy spell. Plaintiff testified that she did not have any difficulty in walking before the accident and that she had never been treated for complaints of dizziness. Plaintiff's husband also testified that plaintiff had never suffered from dizzy spells. Dr. Grossman, who treated plaintiff after her fall, also testified that he found no evidence that plaintiff suffered from dizzy spells. On cross-examination, Dr. Grossman did admit that he wrote a letter, dated May 19, 1964, which stated that plaintiff sustained an injury when she fell on the sidewalk during a dizzy spell. Dr. Grossman admitted that the language was in his handwriting, but claimed that he did not know why it was written.

At the conclusion of the trial, a jury returned a verdict for plaintiff in the amount of $24,000. After the court entered judgment on the verdict, the City filed a post-trial motion, claiming that the verdict was based on perjured testimony and asking for a new trial. The City also filed an affidavit stating they had discovered that plaintiff had filed a claim against the German government for injuries suffered in a concentration camp, and that her file contained findings of physicians demonstrating that plaintiff suffered from dizzy spells long before the accident in question. To show that plaintiff, her husband, and Dr. Grossman, had given false testimony the City asked the court to allow it to take the depositions of two physicians, Dr. Marks and Dr. Esterman, who had treated plaintiff prior to and at the time of the accident in question and to order plaintiff to request the German government to turn over to the City all pertinent records in its possession pertaining to plaintiff's claim against the German government.

The court granted the City's request to take post-trial depositions and ordered plaintiff to authorize release of her records on July 24, 1970.

On December 9, 1970, the City deposed Dr. Marks and Dr. Esterman. Dr. Esterman testified that he attended plaintiff on the day of the accident in the emergency room of the Edgewater Hospital and discovered a fractured hip from a fall caused by plaintiff's tripping on a hole in a City sidewalk. He related that plaintiff did not say she had a dizzy spell. Dr. Esterman explained that an entry in his records which stated "fell

because of vertigo and emotional state from concentration camp", was due to his misinterpretation of plaintiff's use of the term "vegetative dystonia" (a terminology given to all concentration camp individuals which embraces gastro-intestinal and cardiovascular conditions, but not dizziness, according to Dr. Esterman) which he mistook, due to plaintiff's heavy accent, for the term "vertigo, which is dizziness." Dr. Esterman stated that he and plaintiff confused the terms "dystonia" and "dizziness":

> "I used dizziness and she used dystonia. In fact, we do it still today. She will say dystonia and I will say dizziness."

Dr. Marks testified that he had known plaintiff since 1956 and treated her for complaints arising from her stay in a concentration camp, including "\* \* \* post traumatic spondylitis; nervous indigestion and a depressive state." Dr. Marks stated that plaintiff did mention dizziness in 1956 or 1957, but not subsequently and that dizziness never caused plaintiff to fall down. Dr. Marks stated that he never saw any objective symptoms of dizziness in plaintiff and that he never treated plaintiff for dizzy spells. He also stated that he furnished the German government with a report of his treatment of plaintiff in January of 1962.

After taking post-trial depositions, the City asked the court to impose sanctions upon plaintiff for her failure to authorize the release of her medical records. On January 25, 1971, the trial court denied defendant's motion to hold plaintiff in contempt for refusing to release the German records because the court found "\* \* \* they would not materially affect the motion for a new trial." On January 29, 1971, the court also denied defendant's post-trial motion. The City then brought this appeal from the judgment on the verdict from the order denying the City's request that sanctions be imposed on plaintiff, and from the order denying the City's post-trial motion.

Defendant's initial contention on appeal is that the trial court improperly denied it an opportunity to demonstrate that plaintiff used false testimony to prove her claim, by failing to impose sanctions against plaintiff for her failure to authorize the release of her medical records from the German government subsequent to trial. Defendant maintains that those medical records would have shown whether plaintiff and her husband gave false testimony when they testified at trial that plaintiff had never suffered from, or been treated for, dizziness, and whether Dr. Grossman had submitted a report to the German government stating that plaintiff had fallen during a dizzy spell.

■■ Whether sanctions are imposed for the failure to comply with court orders for pre-trial discovery rests within the sound discretion of the trial court. (*Garofalo v. General Motors Corp.*, 103 Ill.App.2d 389,

243 N.E.2d 691.) The discretion is broad and its exercise will not be interfered with unless it appears that it has been abused. (*Rosales v. Marquez*, 55 Ill.App.2d 203, 204 N.E.2d 829.) Similarly, the granting of a new trial based upon the ground that a witness testified falsely is within the sound discretion of the trial court and will not be interfered with unless it appears that it has been abused. *See, Taylor v. City of Berwyn*, 372 Ill. 124, 22 N.E.2d 930; *Leonard v. Jacobs*, 42 Ill.App.2d 261, 192 N.E.2d 304.

■■ In the instant case, the court's order that plaintiff release her medical records, while coming after trial, related to a failure to reveal certain facts during pre-trial discovery and was similar to a pre-trial discovery order. The trial judge considered the evidence adduced at trial and affidavits and depositions presented and found that even if plaintiff had suffered from dizzy spells in the past, there was no evidence presented whatever that dizziness in any way caused the accident in question. The trial judge then concluded that the contents of plaintiff's medical records in the hands of the German government could not materially affect a motion for new trial and decided not to impose sanctions against plaintiff for her failure to comply with the order. Our examination of the record reveals that there was no abuse of discretion by the trial judge in refusing to impose sanctions against plaintiff.

Defendant's other contention on review is that the trial court erred in denying the City a new trial based upon evidence of plaintiff's pre-accident physical condition which was first discovered by the City after trial.

■■ Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts and are subject to close scrutiny. (*Bezark v. Kostner Manor, Inc.*, 29 Ill.App.2d 106, 172 N.E.2d 424.) The principles governing the grant of a new trial for newly discovered evidence have been set forth in *Powers v. Browning*, 2 Ill.App.2d 479, 486-87, 119 N.E.2d 795, 799, where the court stated:

> " '* * * The burden is on the applicant to rebut the presumption that the verdict is correct and to show that there has been no lack of due diligence. (*People v. LeMorte*, 289 Ill. 11.) The evidence must fulfill the following requirements: First, it must appear to be of such conclusive character that it will probably change the result if a new trial is granted; second, it must have been discovered since the trial; third, it must be such as could not have been discovered before the trial by the exercise of due diligence; fourth, it must be material to the issue; and fifth, it must not be merely cumulative to the evidence offered on the trial. [Citing cases.]' *Stocker v. Scherer*, 1 Ill.2d 405."

■■ Whether newly discovered evidence is sufficient for the granting of a new trial is within the sound discretion of the trial judge, and a reviewing court will not reverse a denial of a motion for a new trial based upon such evidence unless there has been a clear abuse of the trial court's discretion. *Leonard v. Jacobs*, 42 Ill.App.2d 261, 192 N.E.2d 304.

In the instant case, the trial court heard testimony by plaintiff that she fell due to a defect in a city sidewalk and that she was not dizzy at the time of the accident. Plaintiff's husband and Dr. Grossman corroborated plaintiff by testifying that they never observed any indications of dizziness on the part of plaintiff.

Defendant, at trial, attempted to demonstrate through cross-examination of plaintiff's witnesses and in argument that plaintiff's fall was due solely to a dizzy spell but was unable to convince the fact finder of this theory. Subsequent to trial, defendant was allowed to take depositions of two physicians who had treated plaintiff, Dr. Esterman and Dr. Marks, in an attempt to demonstrate that plaintiff's witnesses had perjured themselves when they stated they found no evidence of plaintiff having suffered dizzy spells.

The trial judge also considered the failure of plaintiff to authorize release, subsequent to trial, of her medical records on file with the German government. The trial judge concluded, however, that as no evidence whatever had been presented that plaintiff's fall was due to a dizzy spell, even if the German records did demonstrate that plaintiff had suffered dizziness in the past they would not materially affect a motion for a new trial.

■■ After considering the evidence adduced at trial, as well as the depositions and affidavits produced subsequent to trial, the trial judge in the instant case concluded that no new evidence had been produced that would not be cumulative and which would be sufficiently material to change the outcome of a new trial. The trial judge therefore denied defendant's motion for a new trial. Our examination of the record reveals that the trial judge did not abuse his discretion in so ruling.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

BURMAN, P. J., and DIERINGER, J., concur.