ROBERT A. MILLER, Trustee, *et al.*, Plaintiffs-Appellees, *v.* MARSHALL L. KNIGHT, Defendant-Appellant.

Fourth District No. 15640

Opinion filed February 27, 1980.

James G. Linder, of Georgetown, for appellant.

Phillip Stephen Miller, of Acton, Acton, Meyer & Smith, and Carroll Snyder, both of Danville, for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiff, Robert Miller, is landlord and trustee over approximately 212 acres of land that comprised the John Miller trust farm. The farm is located in Vermilion County near the town of Sidell. Miller brought an action to recover possession of the land against defendant, Marshall Knight. Russell Puzey, who agreed to lease the farm for the 1979 crop year, joined Miller in bringing the action. After a bench trial, the court found in favor of plaintiffs and awarded possession of the farm to them.

The first issue to be resolved on appeal is whether the trial court's determination that prior to November 1, 1978, defendant informed plaintiff Miller that he would not be farming the land for the 1979 crop year is against the manifest weight of the evidence.

Section 5.1 of the landlord and tenant act (Ill. Rev. Stat. 1977, ch. 80, par. 5.1) provides in part:

"In order to terminate tenancies from year to year of farm lands, * * * the notice to quit shall be given in writing not less than 4 months prior to the end of the year of letting. Such notice may not be waived in a verbal lease."

It is undisputed here that defendant's tenancy commenced with the 1979 crop year and was a year-to-year tenancy which was based on an oral lease. The oral lease did not specify when the term would begin and end. The original leasing occurred in the fall of 1970. In September 1978, plaintiff Miller presented defendant with a written lease that contained provisions that were different from those in the oral agreement. Instead of a 50-50 crop-share basis, the tenant, under the terms of the written lease, would be required to assume more of the expenses. It also is undisputed that Miller leased the farm to Puzey around the middle of October 1978 for the 1979 crop year and that Miller did not give defendant a notice to quit.

Plaintiffs contend, however, that Miller was not required to give notice to defendant to quit possession of the farm since defendant, by his words and actions, surrendered possession of the farm lease for 1979.

Defendant contends that plaintiff Miller had an absolute duty to give notice and that defendant's words and actions are not sufficient to estop him from claiming the protection afforded by the notice requirement.

The testimony that was elicited at trial concerning what defendant said to plaintiffs and other individuals about giving up the farm for the 1979 crop year is controverted almost entirely.

For example, defendant testified that during a conversation between defendant and Miller that occurred outside the Sidell restaurant on October 15, 1978, he never told Miller that he was not going to farm the land. Defendant testified that he told plaintiff that he would farm it again "just like I've been farming it." Plaintiff Miller, on the other hand, testified that the meeting outside the Sidell restaurant occurred on October 2 or 3. Plaintiff testified that he asked defendant whether he was giving up the farm for 1979, and defendant responded, "That's right." Defendant handed Miller the lease at that time. Although plaintiff Miller and defendant disagree on dates and the substance of the conversation, they both agree that the meeting outside the Sidell restaurant was the last time that they discussed the written lease.

Defendant testified further that he never told Clifford Puzey or Gerald McGee, during a conversation at the Sidell restaurant, that he was not going to farm the Miller farm. However, Clifford Puzey, father of plaintiff Puzey, testified that defendant said that he gave up the Miller farm. While McGee testified that defendant, in reference to the Miller farm, stated that he, defendant, would have less ground to farm next year.

Plaintiff Puzey testified that after he had leased the land from Miller for the 1979 crop year, he went to the farm on October 19, 1978, to begin spreading fertilizer. He asked defendant if he could do some fall work, and defendant responded, "So, it's you that's going to be farming the farm * * * you can go ahead and do what you want." Defendant testified that he never told plaintiff Puzey that he was going to give up the farm; that Puzey never asked if he could spread fertilizer; and that neither plaintiff told him that he was going to do work on the farm. However, defendant did testify that plaintiff Puzey told him that he, Puzey, was going to try to farm the land.

Whether defendant gave up his lease for the 1979 crop year was a question of fact to be determined by the trial court. A reviewing court may not disturb the trial court's factual determination, unless it is manifestly without support. (*Solomon v. Geller* (1964), 48 Ill. App. 2d 15, 198 N.E.2d 210.) In the case of conflicting evidence, an appellate court may not substitute its judgment for that of the trial court's as to who are the more credible witnesses. (*Rhodes v. Sigler* (1975), 27 Ill. App. 3d 1, 325 N.E.2d 381.) Unless an opposite conclusion is clearly evident from the record, the trial court's findings should not be disturbed. *Rhodes.*

■■ Because there was no agreement between defendant and plaintiff Miller regarding the term of the oral farm lease, the trial court could have found correctly that it ran from March 1 to February 28, as the evidence indicated was customary in central Illinois. Thus, November 1 was established as the due date for notice to quit under the oral lease.

■■ The trial court also found that defendant informed plaintiff Miller that he would not be farming the land for the 1979 crop year and that defendant surrendered the lease and possession of the farm by his statements and conduct prior to November 1, 1978. We believe that the record supports the trial court's determination and that the opposite conclusion is not clearly evident from the record.

Plaintiff Miller, Clifford Puzey, and Gerald McGee all testified, in effect, that defendant had told them that he would not be re-leasing the farm in 1979. According to plaintiff Puzey, defendant acknowledged him as the person who would be farming the land and told him that he could begin working. Defendant allowed work to be performed on the farm during the latter part of October. Defendant testified that he never told anyone that he gave up or was giving up the farm. He thought that if he ordered plaintiff Puzey off the farm, plaintiff Miller would not renew his lease after 1979. Although Miller and the Puzeys hardly were disinterested witnesses, the trial court apparently determined that they were the more credible witnesses and that their testimony, consequently, was more believable than that given by defendant. That determination will not be disturbed on appeal.

The trial court, on the basis of its determination that defendant gave up the lease for the 1979 crop year, found that plaintiffs relied, to their detriment, on defendant's statements and conduct, thereby estopping defendant from raising lack of statutory notice. We are not convinced that estoppel has been invoked properly in this case. We hold that Miller was not obligated to give defendant statutory notice to quit the John Miller trust farm.

Section 5.1 of the landlord and tenant act does specify that a landlord shall provide four months' written notice to quit the farmland and that notice may not be waived in a verbal lease. These provisions presumably were enacted for the protection of tenants: to obviate the situation where a tenant is told to vacate the land on such short notice that he is unable to locate another farm for the forthcoming crop year. Yet, in a case where the tenant explicitly informs the landlord that he will not be reletting the property, there no longer is a need to provide statutory notice to quit, and the landlord is relieved of his duty to so do. In *Solomon v. Geller* (1964), 48 Ill. App. 2d 15, 21-22, 198 N.E.2d 210, 214, the court examined the "doctrine of surrender and acceptance" and stated:

"Under certain circumstances it has been held to apply by

operation of law. As between landlord and tenant, it is a set of circumstances under which a court may come to the conclusion that an agreement had been reached whereby the lessee surrendered the premises and the lessor accepted the premises back, both intending thereby to terminate the lease and cancel all the covenants and obligations thereunder."

■■ Defendant here exercised his prerogative to surrender the year-to-year tenancy when he acceded to Miller's inquiry, outside the Sidell cafe, that he would be giving up the farm for 1979. Our construction of section 5.1 precludes defendant from claiming successfully that he unequivocally was entitled to receive four months' notice to quit.

■■ We agree with the defendant that certain testimony by plaintiff Miller concerning a telephone conversation with a neighbor of defendant was hearsay and improperly admitted. The error, however, is harmless since the evidence, without Miller's testimony about the phone conversation, supports the trial court's order. (See *People v. Owens* (1970), 126 Ill. App. 2d 379, 261 N.E.2d 785.) Moreover, defendant's opposition to the reference to the testimony that was made by counsel during closing argument is not persuasive. The judge is expected to disregard any remarks that misstate the evidence.

Plaintiff Puzey testified at trial that on October 19, 1978, he went to the farm with Jerry Klayer in order to spread fertilizer. Puzey testified that upon arriving, he spoke with defendant; he asked if he could do fall work, and defendant told him, in part, to go ahead.

In a post-trial motion for a new trial, defendant sought to have the court reexamine the evidence in view of the accompanying affidavits of William Norman and defendant. Norman affirmed that on April 7, 1979 (several days after trial), he and defendant spoke with Klayer, a fertilizer spreader in the Sidell area. Klayer told him that in October 1978, he and Russell Puzey spread fertilizer on the farm; that he had spread one truck of fertilizer before Puzey spoke with defendant; and that although he would testify if subpoenaed, he did not want to get involved voluntarily in the litigation.

The trial court denied defendant's motion, and defendant argues on appeal that the trial court erred.

■■ The general rule is that applications for a new trial on the ground of newly discovered evidence are not favored by courts and are subject to close scrutiny. (*Hearst v. City of Chicago* (1973), 9 Ill. App. 3d 1085, 293 N.E.2d 738.) A new trial should not be allowed where the newly discovered evidence could have been produced at trial had the movant exercised due diligence and not unless the evidence probably would result in an order in the movant's favor. *Jenkins v. Dearborn Securities Corp.* (1976), 42 Ill. App. 3d 20, 355 N.E.2d 341.

■■ The trial court here ruled correctly. Suit was filed in November 1978, and trial was held in April 1979. Defendant did not conduct any pretrial discovery; he did not even request a list of plaintiffs' witnesses. We do not hesitate to conclude that defendant failed to exercise due diligence in preparing for trial. In addition, there is no indication that Klayer's testimony would change the outcome of the trial. The testimony only would show that Puzey spoke with defendant at a later time, after some of the fertilizer already had been spread. The testimony would contradict part of Puzey's testimony, but this contradiction does not go to a material factor.

On the basis of the foregoing, we affirm the trial court's judgment.

Affirmed.

CRAVEN and WEBBER, JJ., concur.