Marion Hanson, Plaintiff-Appellant, v. Calvin Darby, Ronald H. Blomberg, Omar Bakeries, Inc., and John Rauch, Defendants-Appellees.

Gen. No 68–33.

Second District.

October 15, 1968.

339

Neuendorf and Nickels, of Sandwich, for appellant.

Matthews, Jordan, Dean and Suhler, of Aurora, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiff, Marion Hanson, brought this action against Calvin Darby, Ronald H. Blomberg, Omar Bakeries, Inc., and John Rauch, defendants, to recover for personal injuries which she sustained in an automobile accident on January 29, 1965. The defendant Blomberg was dismissed out of the case at the close of all the evidence. The jury returned verdicts in favor of the defendants, Omar Bakeries, Inc. and John Rauch; it also returned a verdict in favor of the plaintiff and against the defendant Darby and assessed damages in the sum of $10,000. The trial court subsequently granted a judgment notwithstanding the verdict in favor of the defendant Darby (herein called Darby), and the plaintiff appealed from the judgment notwithstanding the verdict.

■ Under Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967), a judgment notwithstanding the verdict may be entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. The main question presented for our review is whether the evidence in this case was such, that under the Pedrick rule the trial court could properly enter a judgment for Darby, nothwithstanding the verdict to the contrary.

The plaintiff and Darby are now married: at the time of the injury they were not. On Friday, January 29, 1965, Darby had worked all day—part of the time at his employer's plant in Plano and the remainder in Chicago. He returned to the plant late in the afternoon, and about

341

6:30 p. m., he left the plant in Plano and drove to Sandwich where the plaintiff resided. He picked her up at her home shortly after 7:00 p. m. and they stopped at a tavern at the edge of Sandwich. The plaintiff and Darby had a dinner engagement with another couple in Plano.

Both the plaintiff and Darby testified that each of them had two drinks during the period of time while they were at the tavern in Sandwich. They left the tavern about 8:30 p. m., and proceeded east on Route 34 toward Plano. The weather was extremely cold and the night was dark, but the visibility was good and the highway was clear. Snow was on the ground and on the shoulders of the highway, but not on the highway proper.

Darby proceeded east on Route 34—a two-lane concrete highway, which is fairly level and has wide shoulders. The highway at the point in question has no curves or hills to impair visibility. The accident happened approximately one mile and a half east of Sandwich. The Darby car struck the rear of an Omar Bakeries truck, which was, or had been traveling in the same direction and in the same lane of traffic as the Darby car. The truck, in turn, struck the rear of the Blomberg car, which was also traveling in the same direction and in the same lane of traffic.

Darby testified that he was traveling at about 45 to 55 miles per hour and could see between 60 and 80 feet ahead of him with his lights on dim; that he was alternating his lights between dim and bright because of the oncoming traffic; that at no time had he gone off the highway and onto the shoulder of the road, and that he did not see the Omar Bakeries' truck until he was about 60 to 80 feet behind it. He stated that the truck was not moving, but was standing on the highway, and that he could not see any lights on the back of it. He speculated that no lights were visible—that they were either off or covered with dirt. He did not recall whether or not he had time to apply his brakes.

Generally, the testimony of the plaintiff confirmed that of Darby. She stated that she believed the truck was stopped on the highway; that she didn't see any taillights on the back of the truck, although she was able to determine its color; that she didn't recall that Darby drove off the highway at any time prior to the accident, and that she felt the defendant was driving in his usual manner.

A disinterested witness, who had been proceeding in the opposite direction—westerly—and who was about even with the three vehicles at the moment of impact, stated that he had been traveling at about 55 miles per hour; that he had seen the headlights of the three vehicles which were proceeding in an easterly direction as they approached him, and that, from his observations, the first two vehicles were fairly close. He stated that, as he was watching these approaching cars, the headlights of the third car, at one point, moved out beyond those of the other two vehicles, which indicated that this third car was on the shoulder of the highway. At this time, cars were also about one-eighth of a mile ahead of him—traveling westerly. It was his recollection that the taillights on the truck had been broken when he observed the damage to the truck after the accident.

A state trooper who investigated the accident stated that tracks from the Darby car were visible and could be traced to the ditch where the car stopped; that from these tracks he observed that the car had, prior to the accident, gone off the highway onto the shoulder for about 264 feet, and that these tracks were visible in the snow on the shoulder. He also testified that he was then able to follow the tracks on the pavement in the light frost; that the car, after coming back on the highway, remained on it for approximately 66 feet, then went off the highway and into the ditch on the other side of the highway; that it was within this 66

343

feet that the accident occurred and the debris was on the highway.

The trooper stated that Darby did not talk to him, but that he saw Darby at the scene of the accident and at the hospital that evening; that based upon his observations, Darby was intoxicated. Darby was examined at the hospital but was not hospitalized.

The defendant Blomberg was driving immediately ahead of the Omar Bakeries' truck. He and Rauch (the driver of the truck) were returning the truck to its garage. Blomberg testified that at the time in question, both his car and the truck were traveling approximately 40 miles per hour. Blomberg and Rauch both testified that the truck had three lights—one low and near the rear fender, and one on each side of the back of the truck. Rauch stated that he was driving the truck about 50 to 80 feet behind the Blomberg car; that he first observed the headlights of the Darby car in his rearview mirror when they were approximately a half mile to a mile behind him; that after the accident the right upper taillight of the truck was still burning, and that there was no dirt on the back of the truck.

Another witness, who at the time of the accident was the garage foreman for Omar Bakeries but at the time of the trial was no longer employed by it, testified that the truck in question had been rebuilt just prior to the accident; that the engine, brakes and lights had been repaired; that it had been repainted and decals placed on the truck. He further testified that the color of the truck was red and white—the basic color being red; that three taillights were on the rear on the truck, and that he knew that this particular truck was clean when it went out on its route the morning in question.

Several areas of dispute are readily apparent from the brief summary of the testimony elicited at the trial. While Darby denied that the car he was driving went off the highway at any time prior to the accident,

he asserted that the truck had no taillights that were visible to him and that it was not moving at the time of the collision. Other witnesses, some of whom were totally disinterested, testified that the Darby car did in fact go off the highway prior to the accident; that the truck was moving at the time of the impact, and that the truck had taillights that were operable and burning.

In reference to these matters, item by item, we first consider the testimony on the issue of whether the car driven by Darby went off the highway prior to the accident. His denial of this is supported by the testimony of the plaintiff. However, her testimony when viewed in its entirety, indicates that she was not particularly concerned about observing the manner in which the car was being driven. She was or had been, changing from shoes to boots, and at the time, she and Darby were busy talking. She said that she did not recall that the car went off the highway, but she did not positively state that it did not, in fact, do so.

Contradictory of this testimony was that of two disinterested witnesses—the trooper and the driver of the car proceeding in the westerly direction—both of whom testified that Darby's car did go off the highway and onto the shoulder. The approaching driver testified that the headlights on the Darby car moved off to the right to the extent that the car would have been on the shoulder. The trooper testified that he could follow the tire marks, which indicated that the car had been on the shoulder. While other cars apparently had passed this spot on the highway between the time of the accident and the time the trooper arrived, and presumably would have caused tire marks in the frost on the highway, the trooper still testified that he could follow the tire marks from the point where the car was on the shoulder, then crossed the highway, and to the place where the Darby car ended in the ditch.

We will next examine the evidence relative to the lights on the rear of the truck: Neither the plaintiff nor Darby saw any taillights on the truck; the plaintiff likewise did not see any headlights from cars which were approaching from the east, and yet the car of the disinterested witness was immediately opposite the truck at approximately the time when it was struck by the Darby car.

Darby suggested that perhaps the truck taillights were not visible because of dirt. However, a prior employee of Omar Bakeries testified that the truck was clean when it left the garage that morning, and the driver of the truck testified that it was clean at the time of the accident. The plaintiff testified that it was sufficiently clean so that she could see the lettering on the back of the truck. The testimony of the Omar Bakeries' garage foreman indicated that the truck was in first-class condition; that it had recently been rebuilt, and that the taillights were functioning properly. The driver of the truck testified that one light was still burning after the accident.

As to whether or not the truck had been stopped on the highway, Darby's testimony was contradicted by that of both the truck driver and the driver of the car immediately preceding the truck. The driver of the car which was approaching from the other direction, could not tell whether the car and the truck were moving, or standing still, as he approached the place of the collision.

Darby's version of the accident was that he struck a standing and unlighted truck on the highway. If we are to consider all of the evidence, in its aspect most unfavorable to Darby, with the inferences that may reasonably be drawn therefrom (Larson v. Harris, 38 Ill2d 436, 440, 231 NE2d 421 (1967)), the truck that Darby hit was moving at approximately 40 miles per hour; it had three taillights which should have been visible to him had he been keeping a proper lookout; the

346

back of the truck was reasonably clean; Darby's car went off of the road prior to hitting the truck although the visibility was good and the road relatively straight and level at this particular point, and he saw the truck only a moment before the impact and too late to avoid colliding with it.

The jury might reasonably have inferred from the totality of these facts that Darby was not alert or aware of the condition of the road ahead of him—perhaps because of his conversation with the plaintiff or perhaps because of his previous alcoholic intake. Whatever the reason, the jury could reasonably have inferred that with road and atmospheric conditions as they were, Darby was guilty of wilful and wanton misconduct in not seeing (by his own admission) the truck until it was too late to avoid hitting it.

The trial court stated, and correctly so, that whether or not a judgment notwithstanding the verdict should be granted in this case is a determination that cannot be made without difficulty. However, we cannot agree that all of the evidence, particularly when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors Darby that no contrary verdict based on that evidence could ever stand. There was much conflicting testimony—more than we have referred to in this opinion—and there is nothing inherently improbable in the testimony which contradicts Darby's version of the occurrence.

■ This appears to be a case where the jury, which heard and saw the witnesses, should have weighed the testimony, given credence where it believed it to be due, and made its determination as to whether or not the defendant failed to maintain a proper lookout, and if not, whether this constituted an utter indifference to, or conscious disregard for the safety of others. Moss v. Wagner, 27 Ill2d 551, 555, 556, 190 NE2d 305 (1963); Payne v. Kingsley, 59 Ill App2d 245, 250, 207 NE2d 177

347

■■■■■■■■■

(1965) ; Turner v. Schaeffer, 30 Ill App2d 376, 388 174 NE2d 690 (1961).

Darby contends that the trial court properly set aside the verdict based upon the plaintiff's admissions on the witness stand. We do not agree! Her testimony was inconclusive. She *didn't notice* anything unusual about Darby's driving; *as far as she knew,* he went straight down the road; she *didn't recall* that his car went off the road prior to the accident. She testified, positively, that she didn't see any taillights on the truck—off or on. She testified, also, that she saw no headlights from cars approaching from the east at the time of the accident. Clearly, however, the car approaching from the east was about even with the Darby car at the moment of the impact. She also stated that she did not see the truck until virtually the moment of impact.

The sum and substance of her testimony indicates that she was not paying close attention to the road conditions or to Darby's driving. Whether it was due to the conversation, because she was changing her shoes, or for some other reason, it seems clear that her attention was not directed to the road.

■ ■ If a party testifies deliberately to a concrete fact, as opposed to a matter of inference, opinion, estimate, or uncertain memory, his adversary is entitled to hold him to this fact as an informal admission. Huber v. Black & White Cab Co., 18 Ill App2d 186, 190, 151 NE2d 641 (1958). However, even this rule has limitations. A party may not be absolutely concluded by his admissions as to physical facts. If his testimony with reference to physical facts is doubtful or inconclusive, or if other testimony or evidence is contradictory and persuasive, the effect of the party's testimony may be for the jury in arriving at the true facts of the occurrence. McCormack v. Haan, 20 Ill2d 75, 78, 169 NE2d 239 (1960) ; Higgins v. Atchison, T. & S. F. Ry. Co., 57

Ill App2d 254, 260, 205 NE2d 648 (1965). We are satisfied that the plaintiff's testimony was not such that it should bar her action.

█ Darby asks that if we do not affirm the judgment of the trial court, we then remand the cause for a disposition of his motion for a directed verdict and his motion for a new trial. The disposition of the judgment notwithstanding the verdict is determinative of his motion for directed verdict. Darby filed a posttrial motion, which prayed that the trial court enter a judgment in his favor notwithstanding the verdict for the plaintiff, or, in the alternative, that the trial court grant him a new trial. The defendant did not, however, ask or obtain from the court a conditional ruling on the alternative portion of his motion in the event the judgment notwithstanding the verdict was reversed. The mere filing of such alternative request is not sufficient. It was incumbent upon the defendant to obtain a conditional ruling upon his request for a new trial, and failing to do so, he is deemed to have waived this request. Ill Rev Stats 1967, c 110, par 68.1(5), (6); Fulford v. O'Connor, 3 Ill2d 490, 501, 502, 121 NE2d 767 (1954); McCottrell v. Benson, 32 Ill App2d 367, 371, 178 NE2d 144 (1961); Drews v. Mason, 29 Ill App2d 269, 280, 172 NE2d 383 (1961).

The judgment of the trial court is therefore reversed and the cause remanded with directions to the trial court to enter judgment on the verdict of the jury in favor of the plaintiff and against the defendant Darby.

Reversed and remanded with directions.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.