ARTHUR C. GUENTHER, Plaintiff-Appellant, v. HAWTHORN MELLODY, INC., Defendant-Appellee.

(No. 59626;

First District (5th Division)—March 14, 1975.

*Rehearing denied April 17, 1975.*

Joseph C. Stastny and Oscar R. Kuehn, both of Chicago, for appellant.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll and Lloyd E. Williams, Jr., of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from a judgment in favor of defendant in a personal injury action. On appeal he contends: (1) that the trial court erred in denying his motion for judgment notwithstanding the verdict, (2) that the jury's verdict was against the manifest weight of the evidence, (3) that the trial court erred in admitting evidence of earnings from his

partnership, and (4) that the trial court erred in refusing to permit him to show his permanent loss of earnings over his entire life.

At trial the following evidence pertinent to the appeal was adduced. For the plaintiff:

*Arthur Guenther on his own behalf*

He is 55 years old and a partner in a business selling fertilizer, hay, grain and feed which employed five persons full time. His duties included soliciting business, driving a semi-trailer truck to Wisconsin and Indiana to pick up purchases, loading and unloading the truck, helping in maintenance of the trucks, and other minor duties.

On August 26, 1968, he and his son drove to the defendant's farm in Libertyville to make a delivery. On their arrival he saw Glen Konow, defendant's manager who instructed him to place the hay on the east side of the second floor of the barn through the middle door. He moved his truck to a position under this door and went into the barn and up the stairs into the hayloft. The hayloft is an area approximately 120 × 80 feet and has several openings or chutes in the floor through which hay can be pushed to the animals on the floor below. These chutes were either clearly visible or surrounded by guard rails for protection. The floor was covered practically solid by chaff, sometimes up to 6 inches deep and it was hard to see the floor or its condition.

He and his son started dragging the elevator which weighed 350 pounds across the loft from the west side to the east side. The elevator was used to carry the hay bales up to the hayloft area.

After dragging it to within 6 feet of the middle door they set it down to take a rest. Plaintiff took a step back and fell through the floor of the loft, landing on the ground floor 12 feet below the loft. Paul Kottke was the first person to reach him after the fall. Plaintiff had severe pain and was covered by hay and chaff.

He was hospitalized for several weeks and incurred medical bills of approximately $2,800 including out-patient treatment. He returned to work on a limited basis in January, 1969, working only about 2 hours per day. Later he gradually increased this to 5 hours per day. He was not able to perform many of his prior duties including loading and un-loading of the trucks and driving the semi-trailers for pick ups and deliveries.

He testified that his services to the partnership were worth approximately $10,000 per year before the accident, but afterwards were worth only $5,000 per year. On cross-examination, he testified that his profits from the partnership as reported on his income tax returns were $7,500 in 1966, $9,100 in 1967, $10,200 in 1968, $10,960 in 1969, $12,900 in 1970, $13,400 in 1971, and $17,600 in 1972.

*Gerald Guenther*

In addition to corroborating his father's testimony he testified that after his father fell, he went down to the ground floor. He looked up at the loft ceiling and noticed braces which formed a rectangular opening of about 3 feet by 4 feet in size. Surface material from the ceiling was hanging down through the hole. Old broken boards about 1 inch thick and greyish in color with jagged ends were lying around his father.

*Dr. Henry W. Apelbach*

He is an orthopedic surgeon. He examined plaintiff after this accident. He diagnosed a tear of the muscle cuff of the right shoulder requiring surgery and also noted compression fractures of two vertebrae. His prognosis was that plaintiff would have no active motion of the right shoulder and would continue to suffer pain in his shoulder and back.

*Paul Kottke*

He was a hay dealer and was walking on the ground floor of the defendant's barn when plaintiff fell through the loft floor. He had been in the loft on many occasions, but could not see the floor there because it was covered with hay and chaff. He examined boards that had fallen with plaintiff and found that they were about an inch or inch and a half thick and appeared rotten and gray. He also saw several splinters on the floor and chaff covering plaintiff. The hole through which plaintiff fell was about 1½ feet wide and 2½ feet long.

*Donald W. Sneed*

He is a consulting actuary. He testified as to plaintiff's life and work-life expectancies and also as to the present value of plaintiff's lost earnings based on his work-life expectancy.

For the defendant:

*Kenneth Larson*

At the time of the accident he was defendant's promotion manager and its farm director. The barn was used for promotional activities, the first floor to demonstrate milking operations and the second floor to store hay. He made regular inspections of the loft on Saturday mornings during 1968 and was not aware of any defects in the floor of the loft or the boards covering the holes. If there was anything rotten or defective about the floor or the boards he would have seen it on those regular inspections if it was not covered by hay. When hay was delivered, the floor was swept clean as soon as employees had the opportunity. He had no knowledge of anyone ever falling through the floor prior to the occurrence involved here, and no one ever told him of any defects in any of the flooring. The building was inspected by county health, fire and building inspectors. Signs on the stairways to the loft warned that employees only were permitted to enter. The floor was constructed of

planks 2 or 3 inches thick over 12 x 12 timber supported by steel pipes. Trap doors in the loft floor were used to drop hay to the cows below, and the holes were surrounded by railings to prevent accidents. In 1967 some of these holes were closed off to provide additional room for stockpiling hay. Plaintiff fell through one of these holes that had been closed off.

The trial judge during the conference on instructions ruled as a matter of law that plaintiff was a business invitee in the hayloft.

OPINION

■■ Plaintiff contends that the trial court erred in denying his motion for judgment notwithstanding the verdict and that the jury's verdict is against the manifest weight of the evidence. The law is clear that a motion for judgment notwithstanding the verdict should be granted only when all the evidence viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.

■■ In Illinois, a landowner has a duty to exercise reasonable care for the safety of a business invitee and to warn such visitors of latent defects of which he has knowledge or should have knowledge. (*Blue v. St. Clair Country Club*, 7 Ill.2d 359, 131 N.E.2d 31; *Birchfield v. Wabash-Monroe Garage & Parking Corp.*, 113 Ill.App.2d 178, 252 N.E.2d 89.) In the instant case, since plaintiff produced no evidence that defendant had actual knowledge of any defect in the floor, plaintiff is obliged to rely upon proof of constructive knowledge. He must prove that defendant should have known of the defect. In order to prove this element, plaintiff must establish that the defect existed for a sufficient amount of time so that defendant should have discovered such defect by the exercise of reasonable care. We note that Illinois courts have ruled that this question falls within the province of the trier of fact. For example, the court in *Baker v. City of Granite City*, 311 Ill.App. 586, 594, 37 N.E. 2d 372, stated:

"In our opinion it was peculiarly within the province of the jury to determine whether or not the alleged defective conditions were of such a character and had existed for such a length of time that the defendant might have discovered and remedied them, and to determine whether or not the defendant was negligent in this respect."

■■ In the instant case, plaintiff's evidence indicates that after the plaintiff fell, the boards which broke appeared to be old and rotten. Defendant's evidence indicated that the boards were installed in 1967,

that no one else had ever fallen because of such a condition, and that periodic inspections of the loft floor were made but no defects had been discovered. The jury, hearing all the evidence, returned a verdict in favor of defendant. While it is common knowledge that wood will deteriorate over a period of time, the jury, on the facts of this case, could have properly determined that defendant had neither actual nor constructive knowledge of any defect in the boards and had exercised reasonable care in trying to ascertain the existence of any such defect. In these circumstances, we do not believe the trial court erred in denying plaintiff's motion for judgment notwithstanding the verdict. Furthermore, on these facts, we cannot say that the jury's verdict was against the manifest weight of the evidence.

■■ Plaintiff also contends that the trial court erred in allowing evidence of the earnings from his partnership into the record thereby depriving him of a fair trial. However, plaintiff's complaint specifically requested damages for loss of earnings. Plaintiff's complaint charged that he "has and will be deprived of large earnings and profits which he otherwise would have made." There is no indication in the record that plaintiff abandoned this portion of his case. In these circumstances, defendant's cross-examination of plaintiff, indicating that plaintiff was not deprived of earnings, was proper and relevant to the issues raised. Furthermore, despite the general rule that an error in the admission of evidence of damages is immaterial where the jury finds against plaintiff on the issue of liability, plaintiff argues that the admission of this evidence was so prejudicial as to deprive him of a fair trial. On the facts before us, not only is there ample evidence on which the jury could base its decisions; but even if such examinations were improper, the evidence indicates that plaintiff opened the door to the admission of such evidence by seeking to prove the value of his services by his own testimony rather than through other evidence.

■■ Plaintiff's final contention is that the trial court erred in refusing to permit him to show his permanent loss of earnings over his entire life. In the instant case, the jury determined that defendant was not liable to plaintiff. It did not reach the issue of damages. Even if the trial court erred as plaintiff contends, such an error will not normally justify a new trial, and we can find nothing in the instant record sufficiently prejudicial to require such action. Although some might disagree with the jury's determination, the jury was the trier of fact.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

DRUCKER and SULLIVAN, JJ., concur.