VICTOR RICHARD DI MASO, a Minor, by Victor Di Maso *et al.*, his Parents and Next Friends, Plaintiff-Appellee, *v.* WIEBOLDT STORES, INC., *et al.*, Defendants-Appellants.

First District (5th Division)    No. 61208

Opinion filed April 9, 1976.—Rehearings denied May 14, 1976 and May 21, 1976.

Kirkland & Ellis, of Chicago (Francis B. Libbe, Gary M. Elden, and Philip C. Stahl, of counsel), for appellant Troy Textiles, Inc.

French & Rogers, of Chicago (Richard G. French and Michael C. Kominiarek, of counsel), for appellants Wieboldt Stores, Inc., and Liberty Pajamas Company.

Joe Reiff, of Whitewater, Wisconsin, for appellees.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This is an appeal from an order granting plaintiff a new trial after a jury verdict in favor of defendants.

The evidence adduced at trial discloses the following occurrences.

Plaintiff, a six-year old boy, was injured when his pajama tops caught fire. The pajamas had been purchased at Wieboldt's Store, after being manufactured by defendant Liberty Pajama Company from a cotton fabric supplied by defendant Troy Textiles.[1]

Plaintiff ultimately relied upon a strict products liability theory that defendants manufactured and sold a product in an unreasonably dangerous condition and that such condition was the proximate cause of plaintiff's injuries. Plaintiff testified that while wearing the pajama tops he discovered a pack of matches. He stated that he placed one of the matches on the striking surface, placed the cover of the match book over it, and, with the match book approximately two to three inches from his pajamas at waist level, struck the match. As he started to blow the match out, he noticed that his pajamas had caught fire and attempted to put out the fire. He was unable to put the fire out with his hands. Plaintiff believed that the match, and the flame from the match, did not come into physical contact with the garment. No one, other than plaintiff, witnessed the ignition of the pajama tops.

Defendant Troy Textiles transforms raw cotton into finished fabric material which can be used for many purposes. It does not design or manufacture for sale any finished garments. Defendant Liberty Pajamas is primarily in the business of manufacturing men's and boys' pajamas. In 1967, Liberty purchased from Troy Textiles 240,000 yards of cotton which was subsequently manufactured into pajamas. Liberty sold pajamas to Wieboldt's, where the plaintiff's pajamas were purchased. Between 1946 and 1968, Liberty Pajamas produced approximately 30 million pairs of boys' pajamas and had not received complaints with respect to the flammability of any of those pajamas.

The expert witnesses who subjected the fabric to tests stated that the fabric met all recognized commercial and governmental safety standards for flammable fabrics. Plaintiff's expert witness admitted that the pajamas could not be ignited if the match and flame were held two to three inches away from the garment. All experts stated that a match flame would have to be within one-eighth inch of the fabric to ignite it.

During closing argument for defendant Troy Textiles, its attorney stated:

"So what have we left? What's left in the case? A completely

---

[1] The parents of plaintiff brought suit on behalf of plaintiff for his injuries and separately on their own behalf for the medical expenses they incurred because of his injuries. They subsequently assigned their cause of action to plaintiff.

normal, universally used, 3 ounce 100 per cent cotton print cloth which we at Troy produced exactly as it was ordered by Liberty for us to produce it and had been doing for 20 years or more.

A boy six years and eleven months old was playing with matches and caught—apparently caught it on fire. Unfortunately, no question about it, but quite understandable.

Must Troy Textile then forever stop producing print cloth? Is that the answer? Must Troy follow every yard of cotton it produces to every home, to every apartment in this world or in this land to see that somebody doesn't set it afire by a match or a cigarette?

Mr. Reiff: I'm going to object to this.

The Court: Sustained.

Mr. Reiff: This is getting too far.

The Court: Sustained.

Mr. Libbe: If Mr. Beroer's testimony is believed, if you believe that, then there isn't an article of wearing apparel except heavy wool that isn't unreasonably flammable."

During closing arguments for defendants Wieboldt Stores and Liberty Pajamas, the attorney representing both defendants stated:

"The boy testified as to what he did that day. Obviously this could not have happened the way he said it happened.

Now, he was only about six years of age, one month away from seven years of age, but what he said happened could not have happened that way, and I am not saying that he is not telling the truth because he knows it. I am not even suggesting that.

What I am saying is that this is something that was a horrifying experience. He is trying to recreate it as best he can.

I am confident and it's a matter of common knowledge when parents tell children not to play with matches, they should tell them it is dangerous to play with matches. That day he was playing with matches, but he knew he should not be doing that.

He said it was the first time. It may have been. It may not have been, but he knew he shouldn't have been playing with matches.

Mr. Reiff: I am going to object to that.

The Court: Sustained.

Mr. Reiff: This has nothing whatever to do with the matches.

The Court: Sustained.

Mr. French: He told us that the closest that he got with the matches to his pajamas was 2½ to 3 inches, but his own experts said that these pajamas will not light up that way. We do know this. Somehow or other those pajamas did catch on fire. They did, but the question is, were these unreasonably flammable?"

Following the conclusion of closing argument, the jury returned a

verdict in favor of defendants. Plaintiff then filed a motion for a new trial, alleging 17 different grounds in support of such request. The court granted plaintiff's motion for a new trial, and in so doing made specific references to the above mentioned statements made by defense counsels in closing arguments. With respect to remarks made by counsel for defendants Wieboldt's Stores and Liberty Pajamas, the court concluded:

> "This language was designed to suggest to the Jury the Plaintiff or his parents might be guilty of contributory negligence. Notwithstanding, Counsel admitted it was not an issue. Mr. French, an experienced lawyer, could not be unaware of the possible effect upon the Jury of this type of argument. The choice of words could only be susceptible of one construction, and then namely, but for the contributory negligence on the part of the Plaintiff, the incident would not have occurred."

With regard to the statements made in closing argument by counsel for Troy Textiles, the court stated:

> "The gist of this argument was that there was no feasible way for the Defendants to prevent incidents of the kind that injured a minor Plaintiff.
>
> Counsel was aware of its fallacy. The Defendants were in a better position than the Plaintiff, or ordinary customers, to recognize the propensity of the material when exposed to flame, and should have placed a warning on the garment. It could have been done cheaply by sewing a small label on the garment. Failure to warn of danger has been deemed a defect by the Court.
>
> The lawyers for the Defendants are able and experienced lawyers and could not but be conscious of the effect of the specious argument. The only evidence in the case as to how it happened was the testimony of the minor.
>
> It was a Jury question as to whether or not the garment was dangerously flammable. The only Jury queston was, was the garment flammable.
>
> The element of contributory negligence injected into the case could well have been the determining factor in the rendering of the Jury's verdict, and the Court will grant a motion for a new trial."

Defendants appeal from the trial court order granting plaintiff a new trial.

OPINION

■■ It is well established that a motion for a new trial is granted in the sound discretion of the trial court (*Buer v. Hamilton,* 48 Ill. App. 2d 171, 199 N.E.2d 618; *Potter v. Ace Auto Parts and Wreckers, Inc.,* 49 Ill. App. 2d 354; *Lombard Park District v. Chicago Title & Trust Co.,* 103 Ill. App.

2d 1, 242 N.E.2d 440), and will not be reversed by a reviewing court except in case of a clear abuse of such discretion. (*Klatt v. Commonwealth Edison Co.*, 33 Ill. 2d 481, 211 N.E.2d 720; *Hearst v. City of Chicago*, 9 Ill. App. 3d 1085, 293 N.E.2d 738; *Boone v. Baker*, 9 Ill.App. 3d 509, 292 N.E.2d 461.) The presumption on review is that the trial court, being in a position to determine accurately whether the verdict of the jury was proper, had determined correctly in disposing of a motion for a new trial until error is shown, whether the motion was granted or denied. *King v. City of Chicago*, 53 Ill. App. 2d 484, 202 N.E.2d 839; *Warren v. Patton*, 2 Ill. App. 2d 173, 119 N.E.2d 465.

A review of plaintiff's motion for a new trial discloses that 1 of the 17 grounds submitted in support was the prejudicial conduct of defendants' attorneys throughout the trial. Included within this ground were the above mentioned comments made by defendants' attorneys during closing argument to the jury, which the trial court explicitly mentioned as a reason for granting plaintiff's motion.

Defendants in their briefs rely upon *Mulvey v. Illinois Bell Telephone Co.*, 5 Ill. App. 3d 1057, 284 N.E.2d 356, *aff'd*, 53 Ill. 2d 591, as being dispositive of the question of whether defendants' attorneys have been guilty of improperly interjecting contributory negligence into the case at bar. In *Mulvey*, plaintiff, administratrix, sued defendants in a wrongful death action to recover for decedent's death as a result of an automobile collision. During the course of closing arguments, the attorney for defendant Illinois Bell Telephone Company stated to the jury:

> "If you stop to think about it, if either one of them—Owen or Mulvey—had used some care and slowed down as they were approaching that intersection even a little bit—
>
> Mr. Jenkins [counsel for plaintiff]:
>
> > If your Honor, please, the Court has ruled that there is no issue in this case of Mr. Mulvey's negligence. Counsel is going far beyond propriety and is being very, very unfair. There is no issue here of Mr. Mulvey's negligence."

The court, in rejecting plaintiff's contention that defendants' comments injected the issue of contributory negligence into the case, stated:

> "The defendant maintains that the reference was to proximate cause, not contributory negligence. This exchange followed a long discussion by defense counsel of the manner in which Owen had been driving. It was proper for defense counsel to comment that Owen was the sole proximate cause of the accident. When taken in context, the language was clearly aimed at the issue of proximate cause. Defense counsel's use of Mulvey's name was not proper but after objection the question was rephrased to refer only to Owen. In addition the jury was instructed by the court and told by counsel

that their arguments were not evidence and that the court would instruct them as to the law. The jury was not instructed on contributory negligence but was instructed as to what the issues in the case were, including proximate cause. Plaintiff had an opportunity to answer this argument and he did in fact do so.

We find that defense counsel's remark, taken in context, properly referred to proximate cause and therefore was not prejudicial."

It is clear in *Mulvey* that the only statements which drew the attention of the jury to plaintiff's conduct and possible negligence arose in defense counsel's remarks made during closing argument. In the instant case, a review of the record indicates that in addition to the above mentioned remarks made during closing arguments, there exists a series of questions asked by both defense attorneys which were clearly designed to elicit responses concerning both plaintiff's and his parents' culpable conduct and possible negligence even though not in issue. We find *Mulvey* distinguishable and therefore inapposite to the facts at bar. We cite as examples the following questions and answers elicited by defense counsel.

Mary Amelio testified for the plaintiff and stated she purchased the pajamas for plaintiff from Wieboldt's Stores. On cross-examination the following colloquy occurred between the witness and defense counsel for Troy Textiles:

"Q. When you talked to Mrs. Di Maso and she asked you to go out and get another pair of pajamas did she tell you the young man had been injured?

A. Yes, on the telephone.
* * *

Q. She told you how he came to get injured didn't she?
A. Yes.

Q. She told you, he was playing with matches, didn't she?

Mr. Reiff: I am going to object to this. It has nothing to do with the issues of this case.

Mr. Libbe: Yes, it does. Isn't that what she told you?
* * *

The Court: She may answer.

The witness: Yes."

In cross-examination of plaintiff by defense counsel for Wieboldt's Stores and Liberty Pajamas, the following exchange occurred:

"Q. Do you know how the match got on your person or the flame got close to you?

A. No.

Q. Do you have any recollection of that at all?

A. No sir."

Upon questioning by counsel for Troy Textiles, plaintiff stated that he knew that if he pulled the match through the striking surface it would ignite the match.

Upon cross-examination of plaintiff's mother, defense counsel for Troy Textiles expended considerable time developing how one of plaintiff's parents was responsible for placing the book of matches on top of the kitchen refrigerator and within the reach of the plaintiff.

During cross-examination of plaintiff's father, counsel for Wieboldt's Stores and Liberty Pajamas elicited responses from the witness that this occasion was the first time he knew that plaintiff played with matches, and that just before he went to bed he placed cigarettes and matches on top of the refrigerator.

On cross-examination of plaintiff's expert witness by counsel for Wieboldt's Stores and Liberty Pajamas, the following colloquy occurred:

"Q. Mr. Beroes, you have handed me and I have identified as Defendant's Exhibit 1 for identification the book from which you took these statistics that 33 percent of children under ten years of age who were burned were involved with matches or lighters, is that right?

A. Yes.

Q. Now, sir, the item from which you took the paragraph or the section from, which you took that statistic is entitled Plaything With Matches or Lighters, am I correct, sir?

A. Yes, sir.

Q. And among other things, it indicates that boys are more prone to this percentagewise than girls, isn't that right?

A. Yes.
* * *

Q. And the recommendation made with regard to that was that those persons who utilized the advertising potential of book matches must ponder the attractive formats which might especially be attracted to young children, is that right?

Mr. Reiff: I will object to that. That is immaterial.
* * *

The Court: All right. Read it back. Sustain the objection.
Witness: Yes.

Q. The second recommendation was to educate adults to accept increased personal responsibility for the safe and proper storage of matches and more diligent supervision of young children.

Mr. Reiff: I will object to that as being immaterial.

Mr. French: This is the very thing he used to site [sic] the statistic.

Mr. Reiff: I will object to arguing in front of the jury.

Mr. French: That statistic was based on children playing with matches was it not, that you quoted?

Mr. Reiff: I will object to the repetition here.

The Court: He may answer.

The Witness: Matches and lighters."

Cross-examination of plaintiff's expert witness by counsel for Troy Textiles resulted in the following exchange:

"Mr. Libbe: Incidentally, you showed us how the newspaper would burn. Mr. Beroes, children look at newspapers, do they not?

Mr. Beroes: Of course.

\* \* \*

Mr. Libbe: If a child is in his home and lights a match, sets a newspaper on fire and burns himself, is the newspaper dangerously defective or flammable?

Mr. Reiff: I am going to object to this; immaterial and irrelevant.

\* \* \*

The Court: Sustained."

On cross-examination by defense counsel for Wieboldt's and Liberty Pajamas, John Quillin, fire chief of Oak Park, responded to the following questions:

"Q. Now, under your duties as chief of the Oak Park Police [*sic*] at that time and presently you are required to investigate, are you not, the cause of the fire?

A. Yes, sir.

Q. And that was done in this instance, wasn't it?

A. Yes, sir.

Q. You determined that this was caused because the boy was playing with matches, is that right?

A. I didn't determine that.

Q. Your jurisdiction determined it?

A. Yes."

On cross-examination by the attorney for Troy Textiles, the fireman was asked:

"Q. Did you ask either the mother or the father of the boy what caused the fire to his clothing? Or to him?

A. No sir."

In addition to the previously mentioned remarks made to. the jury during closing argument, and found to be prejudicial by the trial court, counsel for Wieboldt's Stores and Liberty Pajamas stated:

"He [plaintiff's expert witness] just merely states that everything that mankind wears today is dangerously flammable. Well, it probably is, if you play with fire, because it will all burn."

Later in closing argument counsel for Troy Textiles stated to the jury:

"Ladies and gentlemen, let's tell it as it is, or as it was. The proximate cause of this accident was the use or playing with matches.

Mr. Reiff: Oh, I'm going to object to that.

* * *

The Court: You can argue the issue, counsel.

Mr. Libbe: A fire just didn't come out of the sky. It came from some place and it came from the matches the boy was striking.

* * *

The introduction of the flame to the innocent pajama—as they said there, they were innocent, or as they rested on the boy they were innocent. The introduction of the flame to the cloth is what proximately caused the burning and the injuries. Without that flame there could have been no accident.

Mr. Reiff: Well, I am going to object to this 'without the flame there could have been no accident.'

* * *

The Court: Continue your argument, counsel."

■■ A review of the pleadings and the record before this court discloses that the sole issue to be resolved before the trial court was whether the cotton pajamas fabricated, manufactured and sold by defendants were in an unreasonably dangerous condition, *i.e.*, whether when once ignited the article was unreasonably dangerous in the manner and speed in which it burned. The above mentioned comments and the record in its entirety clearly support the trial court's conclusion that throughout the trial and closing arguments defense counsels were responsible for making numerous statements calculated to raise an inference in the jury's minds that either plaintiff was negligent for playing with matches or his parents were culpable in providing the opportunity for plaintiff to obtain matches. The fact that defendants claim they were aware that contributory negligence would not be in issue cannot negate either the irrelevancy or the prejudicial effect of many of the questions and comments made by defense counsels.

■■ Counsel for defendant Troy Textiles has argued that plaintiff's complaint never alleged a failure to warn by any defendant, and since Troy Textiles only supplied the cotton fabric and was never in a position to place a warning on the final garment, the reasoning of the trial court in support of its order granting a new trial is erroneous and must be reversed. We disagree. In determining the propriety of the ruling of the trial court on a motion for a new trial, the reasons given by the trial court for its actions are immaterial. (*Meyer v. Povilat*, 20 Ill. App. 2d 279, 156 N.E.2d 4.) The reviewing court is not limited by the trial court's reasoning

in the consideration of the case, and the ruling of the trial court granting a new trial can be sustained by the reviewing court on all the grounds urged in the lower court in support of the motion, even though the trial court did not state all those grounds as the basis of its action. (*Meyer v. Povilat*, 20 Ill. App. 2d 279, 156 N.E.2d 4; *Commonwealth Building Corp. v. Hirschfield*, 307 Ill. App. 533, 30 N.E.2d 790; *Callos v. Public Taxi Service, Inc.*, 292 Ill. App. 399, 11 N.E. 2d 209.) A review of plaintiff's motion for a new trial and the record in the instant case indicate that both attorneys were responsible for repeatedly raising inferences that plaintiff and his parents were guilty of improper and negligent conduct causing plaintiff's injuries. We conclude that the reasoning relied upon by the trial court in granting the new trial in the case of defendant Troy Textiles does not preclude this court from affirming the order granting a new trial.

Based upon a review of the record, we find plaintiff was deprived of a fair trial and therefore conclude that the trial court did not abuse its discretion in granting plaintiff's motion for a new trial.

For the reasons stated above, we affirm the trial court's order granting plaintiff a new trial.

Affirmed.

DRUCKER and SULLIVAN, JJ., concur.