RUSSELL RALSTON, Adm'r of the Estate of Romney Ralston, Deceased, Plaintiff-Appellee, v. HAL W. PLOGGER *et al.*, Defendants-Appellants.

Fourth District   No. 4—84—0628

Opinion filed April 10, 1985.

TRAPP, J., concurring in part and dissenting in part.

Gordon R. Broom, of Burroughs, Simpson, Wilson, Hepler, Broom & McCarthy, of Edwardsville, for appellants.

Dennis French, of Phelps, Carmody, Kasten & French, of Carlinville, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff, Russell Ralston, brought this wrongful death action as administrator of the estate of Romney Ralston. After trial on the merits, a jury returned a verdict in favor of the defendants, Hal W. Plogger and Houlette & Seaton, Inc. The trial court, however, granted the plaintiff's motion for a new trial, and we granted the defendants leave to appeal under Supreme Court Rule 306. 87 Ill. 2d R. 306.

On September 26, 1981, nine-year-old Romney Ralson was fatally injured when a pickup truck struck him. Plogger was driving the truck on behalf of his employer, Houlette & Seaton. The accident occurred on Emerson Airline Road at about 11:30 a.m. Plogger testified he first saw the boy on a bike about 75 yards away. The boy was riding west near the left edge of the road. Plogger was also traveling west at about 45 or 50 miles per hour in the right lane. The boy made a sharp turn and started to come to the right side of the road. Plogger took his foot off the accelerator to slow down, but he did not apply the brakes. He attempted to pull his truck off the road to the right. The left fender of the truck collided with the bike at the edge of the road. Plogger drove his truck completely off the road. When he

eventually stopped, he saw the boy lying with his head on the edge of the road.

Ambulance attendants, who arrived at the scene a short time later, testified the boy's body was about four feet off the road. The bicycle was lying 15 to 20 feet east of the body and between 5 and 10 feet off the road. One of the attendants testified that tracks made by the truck showed it had left the road completely about 50 to 75 feet east of the bicycle. That attendant, Thomas Stults, was also the deputy coroner. At the accident site, Plogger told him that he had seen the boy and had taken his foot off the accelerator to slow down. He glanced in the rear view mirror, and when he looked up the boy had started to come across the road. Plogger then swerved to the shoulder, but the boy rode his bike onto the shoulder where Plogger hit him.

The decedent's father, Russell Ralston, testified that he observed his son's body four feet off the road when he arrived at the scene. The bicycle was lying eight feet off the road. According to the decedent's father, the marks made by the truck left the road completely about 125 feet east of the bicycle. The decedent's grandfather, Sam Ralston, testified the bicycle was 10 feet from the edge of the road. He measured the tracks left by Plogger's truck and testified they left the road 130 feet east of the bicycle. He also testified that Plogger had stated that he would have missed the boy if he had stayed on the road.

James Aulabaugh, a deputy sheriff, arrived at the scene around noon. He testified the boy's head was lying six inches from the edge of the pavement. The bicycle had already been moved. Aulabaugh noticed blood on the ground near the boy's head. All three ambulance attendants testified there was no blood on the ground. From the tracks made by the truck, Aulabaugh determined the left wheels had gone off the road about two feet before the spot where the body lay. Based on the location of the body, the blood, and the place where the truck left the road, Aulabaugh determined the point of impact was at the edge of the road.

Russell Ralston testified his son had permission to ride on the road, but he was told to get off on the righthand side when traffic approached. Russell Ralston further testified that he had taught his son hand signals. The decedent's mother, Darlene Ralston, stated that the boy was not allowed to ride on the road. If he did so, he was instructed to ride on the righthand side.

The decedent's parents and grandparents testified the boy did many chores around the house and around the family farm. He at-

tended public school in Palmyra through the third grade. His teacher at that school described Romney as learning disabled and difficult to motivate. Due to his poor performance at the public school, his parents transferred him to a private school in Springfield. The family rented an apartment in Springfield for the new school year. Romney's teacher at the private school testified the boy was at the first grade level, but he was a hard worker. Alan Ravine, a certified school psychologist, examined Romney in July 1979. He testified Romney's intellectual potential was in the low-average range. He described Romney as learning disabled and two years delayed in development of visual and motor skills. Ravine testified that while overall skills could have been improved, the overall condition was probably inherent and permanent. He concluded Romney would have been able to work only in highly supervised occupations such as a farm laborer. Fred Gottheil, a professor of economics, testified the average boy in Macoupin County would earn $87,000 in present cash value over his lifetime after consumption.

On November 9, 1982, the plaintiff filed suit on behalf of himself, his wife, and their two daughters. Based upon this court's decision in *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 445 N.E.2d 485, the trial court struck from the plaintiff's complaint allegations concerning loss of society. The court later instructed the jury that the decedent's parents were entitled to a presumption of substantial pecuniary loss but that it could not award damages for loss of society. After approximately one hour of deliberation, the jury returned a verdict "for all of the defendants and against the plaintiff."

On June 29, 1984, the supreme court reversed our decision in *Bullard*. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) The court decided there could be no presumption of the loss of earnings upon the death of a child. The court, however, held parents were entitled to a presumption of pecuniary injury due to the loss of a child's society. Damages are to be offset by child-rearing expenses. (102 Ill. 2d 505, 517-18, 468 N.E.2d 1228, 1234.) On August 2, the trial court granted the plaintiff's motion for a new trial, ruling it had erred in refusing to instruct the jury that damages for loss of society were recoverable.

■ The defendants argue the *Bullard* decision should not be applied to this case because it was handed down 10 months after the jury returned its verdict. In *Bullard*, the supreme court directed its decision be applied "in all similar cases not finally adjudicated ***." (102 Ill. 2d 505, 517, 468 N.E.2d 1228, 1234.) The court has previously defined "final adjudication" as the termination of the last pro-

ceeding and direct appeal. (*People v. Grammer* (1976), 62 Ill. 2d 393, 342 N.E.2d 371.) We conclude this case is not among those finally adjudicated by the date of the *Bullard* decision. *Cf. Trotter v. Moore* (1983), 113 Ill. App. 3d 1011, 447 N.E.2d 1340.

■■ The defendants assert the errors in instructing the jury on damages do not justify a new trial because the jury found in their favor on the issue of liability. Allegations of error concerning the extent of the plaintiff's damages are immaterial when it is evident that the jury found the defendants not liable. *Mulvey v. Illinois Bell Telephone Co.* (1973), 53 Ill. 2d 591, 599, 294 N.E.2d 689, 694; *Intrater v. Thomas* (1977), 54 Ill. App. 3d 709, 717, 369 N.E.2d 1339, 1344; *Guenther v. Hawthorn Mellody, Inc.* (1975), 27 Ill. App. 3d 214, 219, 326 N.E.2d 533, 537.

The plaintiff argues the verdict in favor of the defendants and against him cannot be construed as a finding of no liability. He notes the court instructed the jury that he bore the burden of proving his damages. The plaintiff contends the verdict can be construed as a finding of no damage rather than as a finding of no liability.

■■ ■ We disagree with the plaintiff's interpretation of the verdict. In *Mulvey*, the same verdict was returned, and the court found it evident that the jury, having found the defendant not liable, never reached the question of damages. (*Mulvey v. Illinois Bell Telephone Co.* (1973), 53 Ill. 2d 591, 599, 294 N.E.2d 689, 694.) The question of damages is not properly considered until the defendants have been found liable, and the court so instructed the jury. (*Schwartz v. Alton & Southern Ry. Co.* (1976), 38 Ill. App. 3d 528, 531, 347 N.E.2d 829, 831.) While the defendants attempted to rebut the presumption that the decedent's parents suffered a substantial loss of future earnings, the defendants never claim the plaintiff suffered no injury at all. The evidence concerning the decedent's performance of chores around the family farm was unrefuted. The personal service of the decedent is an element of pecuniary loss (*Eggimann v. Wise* (1964), 56 Ill. App. 2d 385, 390, 206 N.E.2d 472, 475), and the jury was instructed to consider the decedent's services in awarding damages. If the jury had found the defendants liable, it would have awarded at least nominal damages. (*Lee v. National Material Corp.* (1979), 74 Ill. App. 3d 629, 632, 394 N.E.2d 1, 3.) Although not specifically expressed, the failure of the jury to return a verdict in favor of the plaintiff for damages recognized as recoverable in some amount leads to the inescapable conclusion that the jury found the defendants not liable. (*Ashland Coca Cola Bottling Co. v. Brady* (1933), 252 Ky. 183, 188, 66 S.W.2d 57, 58.) Finally, we conclude the error regarding the damage instruc-

tion was not so pervasive or prejudicial as to create a likelihood that it may have affected the jury's decision on the issue of liability. *Mulvey v. Illinois Bell Telephone Co.* (1973), 53 Ill. 2d 591, 599-600, 294 N.E.2d 689, 694.

On appeal, the plaintiff asserts several additional grounds in favor of sustaining the trial court's ruling. These issues were raised in his post-trial motion, but the trial court did not address them because it felt *Bullard* required a new trial.

Supreme Court Rule 366(b)(2)(iv) provides:

> *"Review of Conditional Rulings on Post-Trial Motion.* The reviewing court, if it determines to reverse an unconditional ruling of the trial court on a post-trial motion, may review and determine any conditional rulings made by the trial court on other questions raised by the motion. No cross-appeal is required." (87 Ill. 2d R. 366(b)(2)(iv).)

Subparagraph (v) provides:

> *"Review Under Rule 306.* If a petition under Rule 306 for leave to appeal from an order allowing a new trial is granted, all rulings of the trial court on the post-trial motions are before the reviewing court, notwithstanding the absence of a final judgment." (87 Ill. 2d R. 366(b)(2)(v).)

Section 2—1202(f) of the Code of Civil Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 110, par. 2—1202(f)) provides:

> "The court must rule upon all relief sought in all post-trial motions. Although the ruling on a portion of the relief sought renders unnecessary a ruling on other relief sought for purposes of further proceedings in the trial court, the court must nevertheless rule conditionally on the other relief sought by determining whether it should be granted if the unconditional rulings are thereafter reversed, set aside or vacated. The conditional rulings become effective in the event the unconditional rulings are reversed, set aside or vacated."

■■ The Illinois Constitution, article VI, section 6, states in part, "The appellate court may exercise original jurisdiction when necessary to the complete determination of any case on review." (Ill. Const. 1970, art. VI, sec. 6.) Illinois courts of review have stated that the reasons specified by the trial court in granting a new trial do not limit the scope of appellate consideration. (*McCracken v. Westinghouse Air Brake Co.* (1981), 103 Ill. App. 3d 26, 28, 430 N.E.2d 539, 541.) The ruling of the trial court can be sustained on any ground urged in the lower court in support of the motion, even though the trial court did not state that ground as the basis for his decision. (*Di Maso v.*

*Wieboldt Stores, Inc.* (1976), 37 Ill. App. 3d 966, 974-75, 347 N.E.2d 466, 474; *Meyer v. Povilat* (1959), 20 Ill. App. 2d 279, 280, 156 N.E.2d 4, 5.) The cited cases involve the reviewing court's affirming the trial court's action for reasons not ruled upon in the trial court.

■ The alternative grounds for new trial unruled upon as a part of the motion in the instant case had been previously ruled upon by the trial court during the process of the trial. The post-trial motion merely asserts those alternative grounds for the same relief and is not a request for a different form of relief. They were briefed and argued in this court. Because we are dealing with alternative grounds for the same relief, *i.e.*, new trial, this court will review those alternative grounds.

■ The plaintiff contends the trial court erred in instructing the jury that contributory negligence on the part of the decedent's parents bars recovery of damages for their pecuniary injuries. The plaintiff notes the trial court instructed the jury on the comparative negligence rules in regard to the decedent's alleged lack of due care. The plaintiff argues it is incongruent to apply the doctrine of contributory negligence under section 2 of the Wrongful Death Act while applying the comparative negligence standard under section 1. Ill. Rev. Stat. 1983, ch. 70, pars. 1, 2.

In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, the supreme court abolished the common law doctrine of contributory negligence and replaced it with the doctrine of comparative negligence. Prior to *Alvis*, the doctrine of contributory negligence had been judicially imposed under section 1 of the Wrongful Death Act to bar recovery whenever the decedent's negligence was a proximate cause of his death. (See, *e.g., Dezort v. Village of Hinsdale* (1976), 35 Ill. App. 3d 703, 342 N.E.2d 468.) After *Alvis*, the decedent's contributorially negligent conduct was no longer a bar.

Unlike section 1 of the Act, section 2 expressly bars recovery with respect to pecuniary injuries suffered by contributorially negligent beneficiaries. Thus, the contributory negligence bar under section 2 was legislatively, not judicially, imposed. In deciding to instruct the jury on contributory negligence, the trial court relied on Justice Ryan's dissent in *Alvis*;

> "Today's decision, of course, can have no effect on those legislative enactments which have incorporated contributory negligence, nor will the law announced today have any effect on those statutes where contributory negligence is not a defense. It appears that this State will be operating under the doctrine of contributory negligence in the areas where the legislature

has acted, and under the doctrine of pure comparative negligence in common law negligence cases. *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 38, 421 N.E.2d 886, 903.

■ We believe the trial court properly instructed the jury on the issue. A court's only legitimate function is to declare and enforce the law as enacted by the legislature, to interpret the language when necessary, and not to enact new provisions or substitute different ones. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 307, 134 N.E.2d 249, 256.) Courts are not free to engraft conditions not within the purview of the statute. (*Baird v. Chicago, Burlington & Quincy R.R. Co.* (1973), 11 Ill. App. 3d 264, 268, 296 N.E.2d 365, 367.) Such action would plainly be a forbidden judicial amendment to the statute. *Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 9, 440 N.E.2d 112, 116.

■ The plaintiff raises several other arguments regarding the court's instructions to the jury. He maintains several of the instructions were misleading, repetitive, and not supported by the evidence. We have reviewed the plaintiff's contentions and find them without merit. Generally, the trial court has considerable discretion in determining the form in which an instruction shall be given. (*Agrico Chemical Corp. v. Forreston Fertilizer Co.* (1975), 32 Ill. App. 3d 986, 988, 337 N.E.2d 76, 78.) An instruction is justified if it is supported by some evidence in the record, and the trial court has discretion in deciding which issues have been raised by the evidence. (*Burge v. Morton* (1981), 99 Ill. App. 3d 266, 269, 425 N.E.2d 539, 542.) Taken as a whole, the court's instructions were sufficiently clear so as not to mislead the jury, and they fairly and accurately stated the law. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 568, 449 N.E.2d 211, 215.) Additionally, we find that the instructions did not unduly emphasize any particular matter.

■ The plaintiff asserts the trial court erred in allowing the deputy sheriff to testify as to the point of impact. The plaintiff contends no foundation was laid for the witness' expertise in accident reconstruction. The deputy testified that he had been a police officer for 14 years. He had received an associate degree in law enforcement and had taken classes covering the investigation of automobile accidents. His training included methods for determining the points of impact. The plaintiff's specific objection relates to the deputy's lack of formal training in physics, engineering, or similar sciences. A witness whose knowledge is based primarily on practical experience, however, is no less an expert than one who possesses particular scientific or academic knowledge. (*Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 516, 388 N.E.2d 844, 847.) The question of a witness' knowledge or

degree of his experience goes to the weight accorded his testimony, not to his competency. *City of Chicago v. Bank of Ravenswood* (1981), 93 Ill. App. 3d 52, 55, 416 N.E.2d 1115, 1118.

■■■ The plaintiff argues the deputy's testimony as to the point of impact was unnecessary and, therefore, inadmissible. Reconstruction testimony may not be used as a substitute for eyewitness testimony. (*McGrath v. Rohde* (1972), 53 Ill. 2d 56, 289 N.E.2d 619.) Whether such expert testimony may be used in addition to eyewitness testimony is determined by whether it is necessary to rely on the application of principles of science beyond the ken of the ordinary juror. (*Plank v. Holman* (1970), 46 Ill. 2d 465, 471, 264 N.E.2d 12, 15.) If the matter is not beyond the ken of the average juror, then it is inadmissible. *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 359, 392 N.E.2d 1, 3.

The plaintiff relies on *Dauksch v. Chamness* (1973), 11 Ill. App. 3d 346, 296 N.E.2d 592, and *Geisberger v. Quincy* (1972), 3 Ill. App. 3d 437, 278 N.E.2d 404. In both cases, the appellate court held that the trial court had erred in permitting a law enforcement officer to testify as to the point of impact of an accident. In each case, the officer's testimony had contradicted at least one of the eyewitness accounts because both the plaintiff and defendant had given conflicting eyewitness accounts. The courts in both cases decided the officer's opinion as to the point of impact was not based on any special knowledge beyond the ken of the average juror, and his testimony should have been confined to his factual observation.

■■■ ■ While we agree that the deputy's opinion on the point of impact was inadmissible, we cannot concur that its admission constituted reversible error under the facts of this case. Initially, we note that the plaintiff's only objection at trial concerned the deputy's qualifications as an expert. A specific objection waives all grounds not stated. *People v. Williams* (1983), 97 Ill. 2d 252, 288, 454 N.E.2d 220, 237.

More importantly, unlike either *Dauksch* or *Geisberger*, there was only one eyewitness to this accident. The deputy's testimony simply corroborated the eyewitness account. Furthermore, the plaintiff himself invited the testimony by trying to impeach the eyewitness testimony. The only reason for offering evidence as to the tracks of the truck was to imply that the accident occurred well off the road rather than at the edge as Plogger testified. (*Cf. Coffey v. Hancock* (1984), 122 Ill. App. 3d 442, 461 N.E.2d 64.) Finally, the deputy testified as to his factual observations upon which he based his opinion. The plaintiff concedes these observations were admissible. If the jury accepted

these facts as true, then it would have necessarily concluded the accident occurred at the edge of the road. When viewed in the context of the other evidence, including that of the sole eyewitness, we do not believe the admission of testimony concerning the point of impact caused prejudicial error. *Diederich v. Walters* (1976), 65 Ill. 2d 95, 357 N.E.2d 1128.

■■ ■ The plaintiff argues the jury's verdict is against the manifest weight of the evidence. He concludes the trial court should have entered judgment in his favor notwithstanding the verdict. Although the plaintiff requested this relief in his post-trial motion, his failure to obtain a ruling could be considered a waiver of the request. (*Fulford v. O'Connor* (1954), 3 Ill. 2d 490, 121 N.E.2d 767; *Hanson v. Darby* (1968), 100 Ill. App. 2d 339, 241 N.E.2d 110.) Moreover, we do not find the jury's verdict to be against the manifest weight of the evidence.

The order of the trial court granting a new trial is reversed, and the cause is remanded with directions to reinstate the judgment previously entered.

Reversed and remanded with directions.

MILLS, J., concurs.

JUSTICE TRAPP, concurring in part and dissenting in part:

I concur in the opinion insofar as it reverses the order of the trial court granting a new trial upon the authority of *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 445 N.E.2d 485.

I dissent from the opinion insofar as it proceeds to review and decide the several issues which were raised and argued in the trial court in the motion for a new trial but which remain in the trial court without a ruling by the trial judge.

It seems unnecessary to again insert the full text of section 2—1202(f) of the Civil Practice Law and Supreme Court Rule 366(b)(2)(iv) and (v), which have been quoted in the principal opinion.

The plain text of section 2—1202(f) imposes upon the trial court a duty to "rule" upon all claims for relief sought in the motion for a new trial. The powers of review in the appellate court provided in Supreme Court Rule 366(b)(2)(iv) and (v), in turn are directed to review of "all rulings of the trial court." It is patent that other than the granting of a new trial upon the *Bullard* issue, there are no "rulings" of the trial court.

This court has determined to reverse the order granting a new

trial for the reason stated by the trial judge but to proceed to review other grounds for seeking a new trial which remain without ruling in the trial court. To take the latter step without remand to the trial court to complete its rulings effectually dismantles both the provisions of the Civil Practice Law and the Supreme Court Rules, and signals to the circuit courts that this court will not require them to follow the Supreme Court Rules and the Civil Practice Law and that for practical purposes this court will overlook them.

We note that in this case one of the issues presented in the trial court upon the motion was whether the verdict was contrary to the manifest weight of the evidence. This is an issue generally, if not peculiarly, appropriate for consideration by the trial court.

The reversal should be accompanied by remandment to the trial court for a ruling upon the grounds for a new trial which have not heretofore been ruled upon.