(No. 45294

ROSEMARY A. MULVEY, Admx., *et al.*, Appellants, v.
ILLINOIS BELL TELEPHONE CO., Appellee.

*Opinion filed Jan. 26, 1973.—Rehearing denied April 2, 1973.*

KLUCZYSNKI, J., dissenting.

JAMES A. DOOLEY, of Chicago, for appellants.

SIDLEY & AUSTIN, of Chicago (JAMES W. KISSEL, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

In a wrongful death action brought by plaintiff, Rosemary Mulvey, individually and as administratrix of the estate of Thomas M. Mulvey, deceased, a jury in the circuit court of Cook County returned a verdict for the defendant, Illinois Bell Telephone Company. The Appellate Court, First District, affirmed (*Mulvey v. Illinois Bell Telephone Co. (1972), 5 Ill. App. 3d 1057*), and the case is now before us pursuant to certificate of importance granted by the appellate court under Supreme Court Rule 316. 50 Ill.2d R. 316.

The cause of action arises out of a head-on collision between two automobiles on Army Trail Road near its intersection with Swift Road in Du Page County at about 10:00 P.M. on July 8, 1963. The plaintiff's decedent, Thomas Mulvey, was driving eastbound on Army Trail Road (a 2-lane highway), and the other driver, Robert Owen, was driving westbound on the same road. As the two cars approached the intersection from opposite directions, Owen's car swerved into the eastbound lane and hit Mulvey's car after striking an unlighted sawhorse barricade bearing the legend "Illinois Bell Telephone Co." which had been placed on the highway as a prank by a 15-year-old boy. Mulvey later died from injuries sustained in the collision.

In their evidentiary depositions, Charles Hauhe III and Gregory Doyle, who were 15 years of age on the night in question, testified that they had left a friend's house at about 9:00 P.M. that night and were walking home in a westerly direction along the north side of Army Trail Road. As they approached the intersection of Swift Road, Hauhe noticed a yellow barricade in some weeds in the bottom of a ditch on the north side of the road. "Just for

kicks" Hauhe removed the barricade from the ditch and placed it in the center of the westbound lane of Army Trail Road near the intersection. The boys waited beside the road for a short time and observed some traffic go around the barricade without incident. They then left and walked north on Swift Road toward their respective homes.

Robert Owen testified that as he approached the intersection he saw the lights of Mulvey's car approaching from the opposite direction at an estimated speed of 50 to 55 miles per hour. Owen first spotted an object in the road when he was about 150 to 200 feet east of it, at which time his speed was about 40 to 45 miles per hour. He did not take any immediate action to avoid the object because he "wanted to know what it was." Later, when he was about 60 feet from it, he applied his brakes and started to skid before hitting the barricade. The evidence established that the skid marks left by his car were 104 feet in length, starting about 60 or 70 feet east of Swift Road in the westbound lane and proceeding into the eastbound lane of Army Trail Road where the point of impact was estimated to be about 15 feet west of the intersection.

A patrolman who investigated the accident testified that there were no traffic signals at the intersection, although there were stop signs for Swift Road traffic to stop for Army Trail traffic. The speed limit for Army Trail traffic going through the intersection was 55 miles per hour. Another motorist, Jack Verdone, testified that at about 10:00 P.M. that night he was driving westbound on Army Trail Road and stopped at the traffic light at Route 53, which was about one mile east of Swift Road. While waiting for the light to change, he observed Owen's car turn west onto Army Trail Road from Route 53 and accelerate fast with "squealing tires." It was his opinion that as the car disappeared over the crest of the hill about a quarter of a mile down the road, Owen was driving about 70 or 75 miles per hour.

The question of ownership of the barricade and how it got in the ditch on the north side of Army Trail Road was not definitely established. Two witnesses who lived in the area testified that about four or six weeks prior to the accident, Illinois Bell personnel had used barricades of the same type as that in evidence while doing work on a telephone pole situated on the southeast corner of Army Trail and Swift Roads; *e.g.,* at a point across the road to the south from the place where Hauhe and Doyle found the barricade. Several witnesses also testified that they had observed a barricade lying in the ditch on the north side of Army Trail Road for a number of weeks prior to July 8, 1963. However, another witness who lived in the area and drove by the intersection regularly testified that he had seen men doing work on the pole but had never seen the barricade before the night of the incident, when he observed it on the highway and drove around it. There was testimony on behalf of the telephone company that although work had been done on the telephone pole on the southeast corner of the intersection in March of 1963, no barricades were ever used on that particular job; that "men working" signs and other types of warning devices had been used instead; that barricades of the type introduced in evidence were used for buried-cable excavations or to divert traffic when men were working underground, but not when men were working above ground on poles such as the work done on the pole in question in March of 1963; that the telephone company sometimes rented barricades from another company for reasons of upkeep and loss from theft on the job; that rental barricades also bore the legend "Illinois Bell Telephone Co." on them; and that in the spring of 1963 a job involving open excavations where barricades of the type in evidence were in use had been done in Addison, Illinois, at a location several miles from the scene of the accident.

Plaintiff's wrongful death action was brought on behalf of herself and her daughter against Robert Owen

and Illinois Bell Telephone Company, alleging as to Owen that he had negligently operated his motor vehicle, and as to Illinois Bell that it had negligently permitted its equipment to remain unattended in a place where it should have foreseen that it would be found and moved by children onto the highway resulting in injuries and death to persons traveling thereon. Charles Hauhe III who had placed the barricade on the highway, was not made a party to the suit. Near the conclusion of the eight-day trial, plaintiff's claim against Owen was settled, and the jury was instructed at the close of the evidence that Owen was no longer a party to the suit. The case was submitted to the jury on the claim against defendant Illinois Bell Telephone Company, and the jury returned its verdict in favor of the defendant and against the plaintiff.

On this appeal, as in the appellate court, plaintiff contends that the arguments of defendant's counsel in closing argument were so prejudicial and unwarranted as to require reversal for a new trial. We will consider each of these in some detail.

Prior to oral argument, the court determined that the evidence presented no issue as to contributory negligence on Mulvey's part, and accordingly, all tendered instructions on that matter were refused. However, plaintiff contends that this issue was nevertheless improperly brought to the attention of the jury by the following argument of defendant's counsel:

"Now, that was Owen's testimony, and you heard nothing else. Granted as Owen testified, everything happened so fast and it might have been hard for him to judge speed and so forth. But, ladies and gentlemen, when you consider those two cars coming up there, both of them approaching an intersection, each seeing another car approaching, particularly Owen and the driver of the other car, would not common sense tell you that if you were driving right up to the speed limit, you would have to slow down a little bit? Isn't that the way a reasonable person would drive coming up to an intersection?

If you stop to think about it, if either one of

> them—Owen or Mulvey—had used some care and slowed down as they were approaching that intersection even a little bit—
>
> MR. JENKINS: If your Honor please, the Court has ruled that there is no issue in this case of Mr. Mulvey's negligence. Counsel is going far beyond propriety and is being very, very unfair. There is no issue here of Mr. Mulvey's negligence.
>
> THE COURT: Counsel, I have ruled on that. Continue. You cannot do that.
>
> MR. KISSEL: Well, if Owen had slowed up just a little bit, there would not have been any accident."

The above appears as a portion of a rather lengthy argument by defense counsel concerning the question of the proximate cause of the accident. Earlier in the argument, reference was made to the fact that another driver traveling in the same direction as Owen earlier that evening had seen the barricade in time and was able to slow down and go around without hitting it. Next followed a discussion concerning the manner in which Owen had been driving, the gist of which was that it was Owen's improper driving which caused the accident. Then came the above-quoted argument. In view of the fact that the issue of Mulvey's contributory negligence had been removed from the case, we agree that it would have been better if there had been no direct reference to Mulvey. However, we note that after the objection the rhetorical question was rephrased to refer only to Owen. Furthermore, it appears to us that the drift of the argument in question concerned the issue of proximate cause—suggesting to the jury that it was Owen, not Illinois Bell Telephone Company, who caused the accident, and further, that the split-second timing of the various factors which combined to cause the accident, including the speed of cars approaching the intersection and these cars in particular, could not reasonably have been foreseen by the defendant. In our opinion, the argument does not constitute reversible error when it is read in context.

Plaintiff next contends that the following argument by defense counsel was unduly prejudicial:

"Did you hear one word as to where Mulvey had been earlier that evening, what he was doing? He was separated from his wife and was way out there in Du Page County.

Wouldn't you have expected that the plaintiff would have had someone come in and testify as to where Mulvey had been and what he had been doing? Remember, he brought in plenty of other people.

MR. JENKINS: If your Honor please, you have ruled that Mr. Mulvey was not at fault in this accident. This argument has nothing to do with that particular issue.

MR. KISSEL: Yes, it does.

MR. JENKINS: It is only to inject prejudice, as all of Counsel's argument has been. By the way, it is completely immaterial and unfair.

THE COURT: Counsel, contain yourself. You will have a chance to answer him.

MR. KISSEL: Well, I won't dwell on that. But you heard not one single word, and if it had been favorable, I am sure you would have heard something."

We concur with plaintiff that this matter was entirely immaterial and that the objection should have been sustained. However, we cannot agree that this minor portion of defense counsel's argument was so prejudicial as to deprive plaintiff of a fair trial.

Another part of defense counsel's closing argument which plaintiff objects to was a comment on the fact that Robert Owen was no longer a party to the lawsuit. After noting that Owen and his defense attorney had been in court until the last day that evidence was heard, defense counsel made the following remarks:

"And then suddenly he is no longer here. You are told just that he is no longer a party to this lawsuit, Robert F. Owen is no longer a party to this lawsuit.

Well, ladies and gentlemen, I leave it to your common sense. The mere fact that he is no longer a party to this lawsuit does not mean that he was not responsible for this accident, and your good common sense would give you the answer there.

I am not here to say there is anything wrong in Owen no longer being a party because he was and he is responsible for that accident.

But what I say is wrong, ladies and gentlemen, is for Plaintiff's Counsel to come in here now and say, say in effect to you, 'Ladies and gentlemen, let's forget about Robert F. Owen—let's just concentrate on The Telephone Company—give us that $75,000.00', that he is talking about."

It would suffice to note that plaintiff made no objection to this argument and is therefore precluded from raising it for the first time on appeal. (*County of Cook v. Colonial Oil Corp.* (1958), 15 Ill.2d 67.) But in any event we do not find the remarks uncalled for under the circumstances. It must be remembered that the entire trial proceeded as an action by plaintiff against both Owen and Illinois Bell Telephone Company, and during the course of the trial plaintiff attempted to establish that Owen's negligence was a proximate cause of the accident. Then, just before the closing arguments, the jury was informed that Owen was no longer a party to the suit. During the course of plaintiff's closing argument, plaintiff's counsel suggested indirectly that a person driving 50 miles an hour perhaps could not have stopped in time to avoid the barricade and then went on to indicate that the question of whether Owen was guilty of carelessness, whether he was going too fast, whether he was not alert, or whether he made the wrong move in an emergency was not material anyway since the question of responsibility now focused on Illinois Bell Telephone Company. In our opinion, this invited a response by the defendant, and we think it was not improper for defendant to point out that the fact that Owen had been dismissed from the suit did not mean that he was not responsible for the accident or that his actions should be disregarded altogether in determining the liability of Illinois Bell Telphone Company. Defense counsel specifically stated that there was nothing wrong in Owen no longer being a party to the suit, and no mention was made of Owen's covenant not to sue or any of the details of the settlement arrived at between plaintiff and Owen near the conclusion of the suit. In this setting we find no error in the complained-of remarks.

Plaintiff also assigns as error defense counsel's rhetorical inquiry as to why plaintiff did not sue Charles W. Hauhe III:

> "Remember way back when we started, you promised that you would put the blame where it really belongs here, and your common sense will enable you to do that.
>
> Another thing, ladies and gentlemen, along this same line, you heard from the depositions that were read of Gregory Doyle and Charles W. Hauhe III, who put the barricade in the road. There is no question but that it was Hauhe.
>
> Why did he put it there? For kicks. There is no question about that either.
>
> With that background, think about this for a moment. Why didn't plaintiff's counsel sue Charles W. Hauhe?"

Plaintiff's objection to the argument was sustained, the jury was instructed to disregard the question about not suing Hauhe, and we are unable to concur with plaintiff's contention that the remark was necessarily error, or if so, that it constituted reversible error.

At the time of the trial of this case, the plaintiff's name was Rosemary Nugent by reason of her remarriage to James Nugent. On *voir dire* examination, defense counsel was permitted to inquire of the jurors whether they were acquainted with the plaintiff under the name of either Mulvey or Nugent. Plaintiff asserts that since evidence as to a surviving spouse's remarriage is immaterial in assessing damages in a wrongful death action, it was improper to let this matter be brought before the jury on *voir dire* examination. Plaintiff also alleges as error certain remarks of counsel during closing argument pertaining to the extent of damages. It is unnecessary to reach these issues on this appeal since we believe it is evident that the jury, having found the defendant not liable, never reached the question of damages. (See *Thompson v. Peters (1972), 386 Mich. 532, 194 N.W.2d 301.*) In so concluding, we recognize that there may be cases in which errors which go to the question of damages may be so pervasive and

prejudicial as to create the likelihood that they may have affected a jury's decision on the issue of liability. However, we do not believe this to be such a case.

The judgment of the Appellate Court, First District, affirming the judgment of the circuit court of Cook County entered on the jury verdict in favor of the defendant is affirmed.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI, dissenting:

I dissent from the conclusion reached by the majority and would reverse and remand the cause for a new trial.

The appellate court granted plaintiff's application for a certificate of importance in which her sole contention was that the disclosure to the jury, during *voir dire*, of her remarriage was improper. As the appellate court noted, this precise issue "has not been discussed in an Illinois case ***." (5 Ill. App. 3d at 1061.) Our constitution and Supreme Court Rule mandate that upon certification by the appellate court an appeal to this court is a matter of right. Ill. Const. (1970), art. VI, sec. 4(c); 50 Ill.2d R. 316.

The majority of this court, however, have found it unnecessary to consider the precise question upon which the certificate of importance was obviously issued. This was accomplished by classifying the matter as relating only to damages. Since the jury determined that the defendant was not liable in the present case, the majority conclude the jury never reached the damage issue. They recognize, however, "that there may be cases in which errors which go to the questions of damages may be so pervasive and prejudicial as to create the likelihood that they may have affected a jury's decision on the issue of liability."

During closing argument a defense reference was made to deceased's method of driving on the night of the accident. This statement was made despite the trial court's ruling that no issue of contributory negligence had been

presented. The majority dismiss plaintiff's contention of error though they observe "that it would have been better if there had been no direct reference to [deceased]."

Notwithstanding the trial court's admonition on this matter, defense counsel persisted by commenting that plaintiff had failed to present any evidence as to deceased's activities prior to the accident. He further alluded to the fact that deceased, who was separated from plaintiff, "was way out there in Du Page County." My colleagues have dismissed these comments as not significantly prejudicing plaintiff.

Similarly, emphasis was placed upon the fact that the youth who admittedly placed the barricade on the roadway was not sued. The majority disagree that this reference was error or, even if so construed, that it constituted reversible error.

After consideration of defense counsel's closing argument, I am of the opinion that the jury's attention was directed to matters which were immaterial as to the issue of liability and which were sufficiently prejudicial to deprive plaintiff of a fair trial. This prejudice was further compounded by the disclosure to the jury of plaintiff's remarriage. Under the circumstances, the importance of the issue which originally brought this case before us should have been considered.